[Civ. No. 26343.   Second Dist., Div. Two.   Feb. 1, 1963.]

MARY DOE ENTERPRISES, INC., Plaintiff and Appellant, v. CENTRAL VALLEY PROFESSIONAL EXCHANGE, INC. et al., Defendants and Respondents.

Langworthy & Oyler and Connolly Oyler for Plaintiff and Appellant.

Clarke & Swink, Jack W. Swink and Gary L. Leary for Defendants and Respondents.

HERNDON, J.—Plaintiff appeals from a judgment denying the injunctive relief and the damages sought by its complaint alleging unfair competition.   It is singular that appellant's briefs fail to set forth any specific assignment of error.   It is not asserted that any error was committed by the court below in the admission or rejection of evidence, nor is there any claim that the evidence is insufficient to sustain the

findings of fact. Appellant's arguments consist entirely of discussions of general rules of law which have been promulgated by our courts in the field of unfair competition. We are therefore impelled to infer that appellant's unexpressed contention herein is that the trial court erred in concluding that these stated rules were inapplicable in the context of the factual circumstances shown in the instant action.

The essence of the findings of fact (which are unchallenged and which this appellate court would be required to accept in any event, because unquestionably they are supported by substantial evidence) are fairly set forth in the following summary. Respondent Gladys Brinkley was employed from October 7, 1954, to August 1, 1959, as a switchboard operator or chief operator by the Around-The-Clock Telephone Exchange then operated by Mary Doe as sole proprietor. After August 1, 1959, this business was operated by appellant corporation, Mary Doe Enterprises, Inc. Respondent Brinkley remained on as chief operator until November 2, 1959, at which time her employment was "terminated amicably and by mutual agreement by reason of ill health on [her] part. . . ."

During her employment, respondent Brinkley acquired information "consisting in general of the names, addresses and telephone numbers of plaintiff's customers and information pertaining to the servicing of such customers' accounts; . . ." Although the trial court found that "a small part of such information was of a confidential character" it is apparent from the record that this information was "confidential" only in the sense that customers of telephone answering services impart personal information to their exchanges which they might not care to place in general circulation, but which is not "confidential" in the sense of being a business secret that would be helpful to a competitor. For example, there were the constantly changing instructions given the exchange regarding the manner in which the customer's business was being conducted, the different places at which the customer might be found if not in his office, the disposition to be made of anticipated calls from the customer's clientele, etc.

Findings also were made to the effect that at the time her employment was terminated, respondent Brinkley had no plan to enter into competition with appellant; that very little of the information which she had acquired concerning appellant's approximately five hundred customers could be, or was, re-

membered by her; that whatever information she might have remembered was of no value in securing or retaining the business of any customers who were former customers of plaintiff; that none of the information acquired, whether or not confidential in the sense above described, would have been helpful to a competing telephone exchange; and that the contacts between appellant's customers and its employees were wholly impersonal so that patronage depended entirely upon the efficiency and price of the services rendered.

Thereafter, on October 1, 1960, respondent corporation, formed by seven persons, five of whom were doctors practicing in the area, entered into competition with appellant and with "several other telephone answering exchanges engaged in a similar business in the area served by telephones with a 'STate' prefix.'' Although respondent Brinkley was a shareholder in this corporation, the court found that she had imparted no "confidential" information acquired during her employment by appellant to respondent corporation; that no such information was ever used in soliciting appellant's customers; and that the only information useful to a competitor of appellant could be obtained from the telephone directory, the Los Angeles County Medical Association directory, "the medical staff list of the Valley Presbyterian Hospital, and the personal knowledge of the [doctors owning shares in respondent corporation]. . . .''

Finally, the court found that any solicitations made by agents of respondent corporation, including respondent Brinkley, were made "without knowledge that the customer being solicited was then a customer of [appellant]'' and "that the type and field of practice of any customer of [appellant] who was solicited by [the members of the corporation] was known by [the member doctors]. . . .''

From the foregoing statement of the facts, it is at once abundantly clear that the judgment of the trial court was correct in every respect. Neither respondent nor this court needs to question the validity of the reasoning or the holdings in the several cases cited by appellant, for it is apparent that they all support the determination made by the trial court rather than that urged by appellant. In the most recent California Supreme Court decision relied on by appellant, *Aetna Bldg. Maintenance Co.* v. *West*, 39 Cal.2d 198 [246 P.2d 11], a judgment for the plaintiff in an unfair competition case was reversed, although the factual situation

there revealed was far more favorable to the plaintiff therein than that presented by appellant here. ▉ As the court there stated at page 203: "In the absence of an enforceable contract containing negative covenants to the contrary, equity will not enjoin a former employee from soliciting business from his former employer's customers, provided his competition is fairly and legally conducted."

As is also noted in the *Aetna* case at page 204: "The facts of this case do not justify the application of principles governing the rights of the parties in connection with retail delivery routes." The court then discussed the elements inherent in such cases as set forth in *George* v. *Burdusis*, 21 Cal.2d 153, 159 [130 P.2d 399], and concluded: "These factors are here absent. Prospective customers are commonly known to the trade or may easily be discovered through business directories or by observation."

▉ Finally, the court in the *Aetna* case concluded at page 205: "Equitable protection may be invoked against the subsequent use by a former employee of knowledge of the 'peculiar likes and fancies and other characteristics' of the former employer's customers where such knowledge will aid him in securing and retaining their business. [Citations.] This rule applies where friendly contact with customers is important to solicitors, a circumstance typical of the so-called 'trade route' cases. It has also been applied to situations involving a knowledge of the customer's desire for specialized information, his preference for certain products, and his buying habits. [Citations.] However, where, as here, superiority of product or service, rather than personal relationships or a secret speciality, is the basis for patronage, a knowledge of the customer's requirements is not sufficient reason for an injunction. [Citations.] Under circumstances of open competition, such knowledge is readily available to all in the trade."

In the instant case, the information acquired by respondent Brinkley was not such that it could be used unfairly to solicit appellant's customers and the court found that no attempt was ever made so to use it. Obviously the businesses here under consideration were not founded upon respondent Brinkley's personal relationships with former customers, but either upon the superiority of the service rendered or upon the personal relationships of the doctors affiliated with respondent corporation.

In addition, the information designated as "confidential"

was, as previously indicated, merely "personal" to the customer. In the nature of things, this type of information would necessarily relate to constantly changing circumstances. If a customer did make a change, he would, of course, immediately impart his "confidential" instructions to his new service. Finally, the court found in the present case that no attempt was ever made to use any information, confidential or otherwise, that respondent Brinkley might have acquired during her employment in soliciting customers for respondent corporation.

The judgment is affirmed.

Fox, P. J., concurred.