[Civ. No. 34499. Second Dist., Div. Four. June 1, 1970.]

BRYCE WORTHINGTON, SR., Plaintiff and Respondent, v.
KAISER FOUNDATION HEALTH PLAN, INC.,
Defendant and Appellant.

## Counsel

Thelen, Marrin, Johnson & Bridges, James W. Baldwin and Andrew J. Nocas for Defendant and Appellant.

Lester & Manley, Charles P. Lester and Wallace J. Manley for Plaintiff and Respondent.

## Opinion

**FILES, P. J.**—This is an action for damages brought by a lessor of an office building against a former lessee. After a court trial plaintiff was awarded $8,035 as the cost of restoring the premises and $2,100 for loss of rent during the three months required to complete the work. Defendant is appealing from the judgment.

In the trial court this action (superior court No. 873821) was consolidated

with another action (No. 803828) brought by the same plaintiff for breach of an earlier lease. The trial court found against plainitiff on that claim, and no attack is made here on that portion of the judgment.

The essential facts, as shown by the evidence and found by the court, are as follows:

In 1948 plaintiff and his wife, Mary Louise Worthington, constructed on land owned by them a one-story medical office building, which included a pharmacy area. The location of the property on North Vermont Avenue, near several hospitals, was especially suitable for this type of use. In 1953 the Worthingtons leased the entire building to defendant's predecessor. In early 1958 defendant succeeded to the interests of the lessee. Thereafter the lease involved in this appeal was entered into for a term of three years, commencing October 1, 1958, with an option to renew for an additional two years. That option was not exercised.

The lease recited: "The premises are to be used for the operation of a medical clinic, doctors' offices, clinical laboratory, optical laboratory, pharmacy and for such incidental uses as may be necessary or convenient in the operation thereof."

One of the covenants of the lease was: "Lessee shall make no changes, alterations and/or additions of a structural nature in or to the demised premises without the prior consent of Lessor. . . ."

In 1959 defendant, with plaintiff's consent, made extensive alterations so as to convert the building into an administrative office suite.

The finding of the trial court as to that arrangement is this: "Before, or soon after, construction of these alterations began, plaintiff gave his oral consent thereto, such consent, however, being solely conditional upon said defendant's restoration of said premises to their previous condition at termination of said defendant's occupancy thereof; said defendant, through its authorized agent, assured plaintiff the premises would be restored and the building put back the way it was."

Following the expiration date stated in the lease, which was September 30, 1961, defendant held over and paid rent for two more months. There is some uncertainty as to which day defendant actually removed its personnel and equipment from the building. The holdover clause in the lease is this: "No notice shall be required from either party to terminate this lease on the expiration date herein specified and a holding over by the Lessee, its assignee or sublessee beyond the expiration of said term shall give rise to a tenancy from month to month only."

The finding of the trial court on that subject was this: "Defendant corpo-

ration held over for two months after the expiration of the term of the Second Lease, vacating and surrendering the said premises sometime in December, 1961."

Defendant did not at any time restore the premises as it had promised at the time plaintiff had consented to the alterations.

This action was commenced on December 3, 1965.

### Which Statute of Limitations Applies?

Defendant pleaded both the two-year limitation for oral contracts (Code Civ. Proc., § 339, subd. 1) and the four-year period for written contracts (Code Civ. Proc., § 337, subd. 1).

Defendant contends that the two-year period is applicable because the agreement it breached was the oral promise to restore the premises to their original condition. We cannot agree that this is the only promise which defendant breached.

The written lease, which was drafted by defendant's attorney, did not contain any express promise by the defendant to return the property in any particular condition at the end of the term. Nevertheless, the lease did include an obligation with respect to the condition of the premises upon the termination of the tenancy.   ■   In determining the duties of the defendant under this particular lease, a court must interpret what these parties meant by the language they used.   ■   It is significant that this building was constructed especially for medical offices, that it was located where there was a demand for such offices, that the lease recited that defendant would use it for "a medical clinic, doctors' offices, clinical laboratory, . . ." etc.; and that the lease prohibited alterations of a structural nature. Under the circumstances it was reasonable for the trial court to conclude that the parties had intended and agreed, by their written lease, that at the termination of the tenancy defendant would surrender the building in a structural condition which was suitable for its continued use as a medical building.

■   Defendant may not now rely upon plaintiff's oral consent to excuse the breach of the lease, for the consent was conditional, and defendant did not meet the condition. Plaintiff, therefore, has not lost his rights under the original agreement.

The duty which defendant breached was one created by the writing itself, as the trial court correctly interpreted it.   ■   It is a familiar rule that an action based on a promise inferred from the writing is an action upon the written contract. (*Amen* v. *Merced County Title Co.* (1962) 58 Cal.2d 528, 532 [25 Cal.Rptr. 65, 375 P.2d 33].) The applicable period of

limitations is the four-year statute prescribed for an action upon an instrument in writing (Code Civ. Proc., § 337, subd. 1.)

Defendant relies upon *Formosa Corp. v. Rogers* (1951) 108 Cal.App.2d 397 [239 P.2d 88] for the proposition that where the lease contains no covenant to restore the premises, no such obligation is implied. That case interpreted a lease in the light of a long and involved relationship between the coowners of a motion picture studio. What was decided there was the intention of those parties, under the circumstances shown in that record. The conclusion reached there is no guide to the construction of the lease in this case.

### When Did the Period of Limitations Start?

Whether or not the action was brought within four years after the breach requires a further analysis of the agreement and the conduct of the defendant.

As is pointed out above, the obligation was to have the premises in the proper condition at the time possession was surrendered. Although the lease specified a termination date of September 30, 1961, they also contemplated the possibility that defendant might hold over. And, in fact, defendant did hold over and pay rent through November 1961 with the consent of plaintiff.

It is defendant's contention that because there is no finding by the trial court that it vacated the premises after December 2, 1961, there is no basis for holding that the action filed December 3, 1965, was timely.[1] The only witness who testified as to the date the premises were vacated was the plaintiff, Bryce Worthington, who at various times gave the date as December 1 and as December 3. He was, on each occasion, speaking of the date when defendant "vacated" or "moved out" of the building. The date the defendant moved out its personnel and equipment is not the date upon which the rebuilding was to be completed. Structural changes of the kind required to carry out defendant's obligation would necessarily be made after defendant's employees had ceased to use the building for administrative offices.

Civil Code section 1945 provides: "Renewal of lease by lessee's continued possession. If a lessee of real property remains in possession thereof after the expiration of the hiring, and the lessor accepts rent from him, the parties are presumed to have renewed the hiring on the same terms and for

---

[1] In discussing the evidence at the close of the trial the court said, "The defendant didn't move out until, at the earliest, December 3rd, 1961." If the court had put that statement in its findings of fact, defendant's argument here could not have been made, and the work of this court would have been simplified. Instead the trial court made its ambiguous finding (quoted above) that the premises were surrendered "sometime in December, 1961." Defendant formally requested a finding as to the exact date, but the trial court refused to make it.

the same time, not exceeding one month when the rent is payable monthly, nor in any case one year."

This presumption is consistent with what the parties appear to have intended under this lease. It is a reasonable conclusion that defendant occupied the premises in October and November under the same terms as theretofore. It is also reasonable to conclude that under the agreement of the parties defendant was not expected to start the restoration of the structure as a medical building until it had ceased to use it for administrative offices. The extension of defendant's use of the building for its own offices postponed, by necessary implication, the time for restoring the premises to a medical building.

■ Since defendant's obligation to remodel could only be performed after it moved its people and equipment out of the building, the agreement necessarily implied some further holding over into December and beyond.[2]

The period of limitations did not start to run until defendant's performance was due. (See *Union Sugar Co.* v. *Hollister Estate Co.* (1935) 3 Cal.2d 740, 745 [47 P.2d 273]; *Richter* v. *Union Land etc. Co.* (1900) 129 Cal. 367, 375 [62 P. 39].)

The remodeling could not have been performed between December 1 and December 3. It follows that a suit filed December 3, 1965, was not more than four years after the date defendant's performance was due. The action was not barred by the four-year statute of limitations.

### *May Damages Include Loss of Use?*

■ We note briefly defendant's contention—made without citation of any authority—that plaintiff's recovery should not include loss of rent during the time reasonably required to remodel the building. As we construe the lease, defendant was under a duty to surrender the premises in a condition suitable for medical office use. Had defendant performed, it would have been required to pay rent during the period required for the work, whether the work was done during the stated term of the lease or during a period of holding over. The loss of rentals was a part of the damage proximately caused by defendant's breach. (See *Henderson* v. *Oakes-Waterman, Builders* (1941) 44 Cal.App.2d 615, 617 [112 P.2d 662].)

---

[2]Civil Code section 1946 provides that a month-to-month tenancy is deemed renewed unless terminated by a 30-day written notice. No such notice appears in the record here. But we need not rely upon the absence of the statutory formality for termination because the circumstances here compel the finding that some additional holding over was necessary (and therefore presumably intended) to carry out a promise that was performable only after November 30.

## Is Mrs. Worthington's Share Recoverable?

The court found the total damages for defendant's breach to be $10,135, and awarded judgment against defendant and in favor of plaintiff Bryce Worthington, Sr., in that amount.

Defendant contends that the damages recoverable by plaintiff are one-half the actual damages since the record shows without conflict that plaintiff and his wife Mary owned the property as joint tenants.

The bizarre history of Mary Worthington's participation in this case must be recited in order to reach the point raised.

The complaint in case 873821 filed December 3, 1965, named Bryce Worthington, Sr., as plaintiff, and alleged that he was the lessor under the lease. Mary was not mentioned.

The answer, filed December 22, 1965, denied that plaintiff was the lessor, and alleged that plaintiff and Mary L. Worthington were lessors. No objection to her nonjoinder was raised. The answer alleged that the action was barred by Code of Civil Procedure sections 337, subdivision 1, and 339, subdivision 1 (the four-year and two-year statutes of limitations).

The case was sent out to a trial department for trial on October 19, 1967. There the trial court, on its own motion, made an order declaring that "Mary Louise Worthington is an indispensable party" and ordering plaintiff "to join Mary Louise Worthington as a party to both of these actions and to file such further pleadings, if any, as may be deemed necessary or appropriate."

On January 23, 1968, plaintiff filed a document entitled "Joinder of party and amendment of complaint." This document stated that "plaintiff hereby joins MARY LOUISE WORTHINGTON as a party defendant to this action and does further hereby substitute said MARY LOUISE WORTHINGTON in the place and stead of defendant DOE I, . . ." The amendment further alleged: "That at all times mentioned herein, plaintiff and defendant MARY LOUISE WORTHINGTON were married to each other and owned the subject real property as joint tenants, and plaintiff at all such times has acted as agent for defendant MARY LOUISE WORTHINGTON, with her consent, regarding the subject lease and all the negotiations, transactions and prosecution of said joint tenants' rights with regard thereto."

On January 24, 1968, Mary Louise Worthington, appearing without an attorney, filed a document headed "Appearance of Mary Louise Worthington and answer to complaint," which stated as follows: "COMES NOW DEFENDANT MARY LOUISE WORTHINGTON, sued originally herein as DOE I and enters her appearance herein fully submitting herself to the jurisdiction

of the above court, and answering plaintiff's complaint as amended, admits each and every, all and singular the allegations therein and alleges that at all times therein mentioned and continuing to the present this defendant has given full authority to the plaintiff, her husband, to act on her behalf in all matters, transactions, negotiations, leases and the like relating to the subject real property, including the prosecution of this action and further does hereby ratify any and all such acts of plaintiff.

"WHEREFORE, this answering defendant requests that plaintiff be allowed judgment as prayed and in the amounts alleged."

On February 2, 1968, defendants filed a motion to strike both the January 23 and January 24 documents upon the grounds they were unauthorized and sham. The motion was accompanied by a demurrer to the amendment to the complaint upon the grounds of (1) misjoinder of parties defendant, (2) uncertainty, and (3) failure to state a cause of action against Mary Louise Worthington.

On February 16, 1968, the judge sitting in a law and motion department overruled the demurrer and denied the motion to strike.

The case eventually went to trial without any further pleadings. Mrs. Worthington attended the trial as a witness, but did not participate otherwise. The entire dispositive portion of the judgment of the trial court is "That plaintiff [singular] recover from defendant KAISER FOUNDATION HEALTH PLAN, INC., the sum of $10,135.00, together with costs amounting to $28.35, in action No. 873 821."

The judgment does not purport to make any disposition whatever with respect to Mrs. Worthington.

The trial court's conclusions of law contain the statement that "Plaintiff at all times herein has acted and is acting as the duly authorized agent for defendant MARY LOUISE WORTHINGTON in the prosecution of this action. . . ."

▪ Plaintiff attempts to uphold this judgment on the theory that he sued as the agent for his wife. This is untenable. Code of Civil Procedure section 367 provides: "Every action must be prosecuted in the name of the real party in interest, except as provided in section three hundred and sixty-nine of this code."

The only exception, that provided in section 369, is as follows: "Executor, trustee, etc., may sue without joining the persons beneficially interested. An executor or administrator, or trustee of an express trust, or a person expressly authorized by statute, may sue without joining with him the persons for whose benefit the action is prosecuted. A person with whom,

or in whose name, a contract is made for the benefit of another, is a trustee of an express trust, within the meaning of this section."

Plaintiff cannot come within that section. The lease sued upon was made in the names of the two Worthingtons.

Plaintiff cites in support of his theory *Miller* v. *Busby* (1950) 101 Cal.App.2d 83 [224 P.2d 754] and *Stegeman* v. *Vandeventer* (1943) 57 Cal.App.2d 753 [135 P.2d 186]. Neither is applicable. Each of those cases holds that a husband may act as agent for his wife in a real estate transaction. But in each of those cases both husband and wife were made parties to the action.

Code of Civil Procedure section 384 allows one coowner to bring an action without joining the others. It provides: "Tenants in common, etc., may sever in bringing or defending actions. All persons holding as tenants in common, joint tenants, or coparceners, or any number less than all, may jointly or severally commence or defend any civil action or proceeding for the enforcement or protection of the rights of such party."

In certain cases all of the coowners are indispensable because, due to the nature of the case, it is impossible to grant relief with respect to one without affecting the others (see, e.g., *Southern Cal. Title Clearing Co.* v. *Laws* (1969) 2 Cal.App.3d 586 [83 Cal.Rptr. 8], involving a community oil lease). But in the case at bench it was possible to award Mr. Worthington his share of the damages without prejudicing the rights of Mrs. Worthington if she was not a party, leaving her claim undetermined. (See *de la Cuesta* v. *Bazzi* (1941) 47 Cal.App.2d 661, 672 [118 P.2d 909].)

Code of Civil Procedure section 389, as amended in 1957, provides: "A person who is not an indispensable party but whose joinder would enable the court to determine additional causes of action arising out of the transaction or occurrence involved in the action is a conditionally necessary party."

That section requires the court to order a conditionally necessary party to be brought in if that can be done. ■ In the case at bench bringing in Mrs. Worthington as a party would enable the court to adjudicate her part of the claim also. Hence it was proper for the court to order her brought in.

■ When plaintiff amended the complaint on January 23, 1968, to join Mrs. Worthington pursuant to the court's order, he alleged he was substituting her for "Doe I." We can find no reason for such an allegation, and can give it no effect. The original complaint alleged "That Doe I, Doe II and Doe III are sued herein under fictitious names, their true names

being unknown to plaintiff." But the complaint, prior to the amendment of January 23, 1968, did not purport to state any cause of action for or against Doe I. (See *Williams* v. *Goodman* (1963) 214 Cal.App.2d 856, 861 [29 Cal.Rptr. 877].) Mrs. Worthington was added as a new party on January 23, 1968, because the trial court had determined that she had not been made a party but should be.

Mrs. Worthington's first appearance in the case was when she filed her pleading on January 24, 1968. Although she called her pleading an answer, she adopted the allegations of the complaint and asked for judgment in favor of plaintiff. From that time on she was a party whose interest was united with the plaintiff, but she was nominally a defendant because, for reasons undisclosed, she had failed to join in the complaint.[3]

As has been indicated above, the trial court's theory that plaintiff could sue as agent and recover for both of them is untenable. But salvation is conferred by the decision in *Martin* v. *Howe* (1922) 190 Cal. 187 [211 P. 453]. That action was brought by one of three coowners of a promissory note to recover his proportionate share of the debt. After the statute of limitations had run, the plaintiff filed a first amended complaint which joined some additional defendants who were alleged to be liable for the indebtedness. Thereafter plaintiff filed a second amended complaint which joined the other two coowners of the note, E. R. Dudley and B. B. Dudley, and asked that they be required to state their claims, if any. The Dudleys then answered and prayed that plaintiff have judgment against the defendants, and that E. R. Dudley have his proportionate share of plaintiff's judgment. After a judgment adverse to plaintiff, plaintiff alone (not the Dudleys) appealed. In answer to the contention of the respondents that the record showed no compliance with Code of Civil Procedure section 382 (fn. 3, *supra*), the Supreme Court said (at p. 195): " 'As far as the respondents other than E. R. Dudley and B. B. Dudley are concerned, it is sufficient if the two latter respondents are made parties in some capacity, so that their rights may be determined in this action.' "

The Supreme Court held that the statute of limitations barred any recovery against the debtors who were joined for the first time in the first amended complaint; but as to the defendants named in the original complaint the judgment was reversed with instructions to enter a new judgment

---

[3]Code of Civil Procedure section 382 provides: "Parties in interest, when to be joined: When one or more may sue or defend for the whole. Of the parties to the action, those who are united in interest must be joined as plaintiffs or defendants; but if the consent of any one who should have been joined as plaintiff cannot be obtained, he may be made a defendant, the reason thereof being stated in the complaint; . . ."

in favor of plaintiff, B. B. Dudley and E. R. Dudley, severally, for their respective shares.

Thus, although the complaint could not be amended to join additional defendants after the statute of limitations had run, it could be amended to bring in parties who should have joined with plaintiff at the outset, thereby supporting a recovery by such newly joined parties.

The reasoning of the *Martin* case was followed in *Taylor* v. *Sanford* (1962) 203 Cal.App.2d 330 [21 Cal.Rptr. 697], which was an action to recover royalties due under a contract. The action was originally brought by one plaintiff, who later amended the complaint to join Repecka and Shannon, who owned a 30 percent interest in plaintiff's royalties. The appellate court assumed Repecka and Shannon to be indispensable parties, and discussed whether the trial court had jurisdiction to proceed prior to the time those additional parties had been joined. The court said (at p. 347): ". . . Repecka and Shannon in fact were joined prior to trial and are now parties plaintiff; we know of no authority that does not permit their joinder after a complaint has been filed or which holds that their joinder under such circumstances does not confer jurisdiction over the subject matter of the action from the date of the filing of the original complaint. In *Martin* v. *Howe,* 190 Cal. 187 [211 P. 453], a joint owner of a note sued thereon before the statute of limitations had run; his co-owners were joined after it had run. The court held the suit proper, and plaintiff's cause not barred by the statute of limitations."

In explaining why the defendant had no valid basis of objection to the late joinder of the coowners of the claim, the appellate court said (at p. 346): "Moreover we are unaware of any inconvenience or disadvantage to defendant caused by plaintiff's failure to join Repecka and Shannon in the original complaint. Plaintiff sued under his contract for 100 per cent recovery from defendant; the effect of joining Repecka and Shannon was no more than to notify defendant that 30 per cent thereof belonged to them and 70 per cent to plaintiff. This created no new or different obligation on the part of defendant nor did it enlarge or increase the same."

We note that in the *Taylor* case the trial court had held that the statute of limitations barred any recovery by Repecka and Shannon for royalties accruing more than four years prior to the date they became parties to the action. Since those parties did not appeal, the appellate court did not have occasion to decide whether that limitation was error. However, the reasoning of the appellate court, based upon the *Martin* holding, indicates that the joinder of these coowners of the claim related back to the filing of the original complaint.

This conclusion is consistent with the reasoning of *Klopstock* v. *Superior Court* (1941) 17 Cal.2d 13 [108 P.2d 906, 135 A.L.R. 318], which held that an action brought by the wrong party plaintiff could be saved by an amendment bringing in the proper plaintiff.

In the case at bench the judgment is defective in that the damages are awarded only to plaintiff Bryce Worthington, Sr. The *Martin* case determined that such a judgment could be corrected by modification in the reviewing court.

The judgment is modified to provide "That plaintiff Bryce Worthington, Sr., and Mary Louise Worthington" recover from defendant. As so modified, the judgment is affirmed. Neither party shall recover costs on appeal.

Jefferson, J., and Dunn, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 29, 1970.