[Civ. No. 27751. First Dist., Div. Two. Feb. 28, 1972.]

FLOYD PAYNE et al., Plaintiffs and Appellants, v.
UNITED CALIFORNIA BANK, Defendant and Respondent.

## COUNSEL

Thomas Schneider, Stefan Rosenzweig and John H. Erickson for Plaintiffs and Appellants.

William H. Orrick, Jr., W. Reece Bader, William F. Alderman and Orrick, Herrington, Rowley & Sutcliffe for Defendant and Respondent.

Richard J. Archer, Stanley A. Doten, Robert D. Raven, Roland E. Brandel, Carl A. Leonard, James H. DeMeules and Morrison, Foerster, Holloway, Clinton & Clark as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

**TAYLOR, P. J.**—This is an appeal by plaintiffs from a judgment of dismissal, sustaining without leave to amend the demurrer of defendant, United California Bank (hereafter bank), to counts 2, 5 and 6 of the first cause of action, and the second cause of action of the amended complaint seeking relief for fraudulent representations, unlawful business practices, and unfair competition. The major contentions are that: 1) the complaint could have been amended to state a class action against the bank; 2) the bank, like the finance companies in *Vasquez* v. *Superior Court,* 4 Cal.3d 800 [94 Cal.Rptr. 796, 484 P.2d 964], was a proper defendant as it financed the transactions through its Master Charge system. We have concluded that the demurrer was properly sustained as plaintiffs did not have the requisite standing to sue the bank as individuals, or on behalf of the public, were not members of the class they purported to represent, and failed to make a timely motion to include a proper party plaintiff.

The amended complaint alleged, so far as pertinent, as a first cause of action on behalf of the six named individual plaintiffs and in the interest of the general public, pursuant to Civil Code section 3369, subdivision 5, and Business and Professions Code section 17535, that all of the defendants had engaged in unlawful, unfair and fraudulent business practices and sought rescission, compensatory and punitive damages, as well as injunctive relief. The individual plaintiffs, Floyd and Leatha Payne, Julio and Josephine Hernandez, and Henry and Viola Eden, all residents of Oakland, entered into respective installment sales contracts for the purchase of vacuum cleaners manufactured and sold by defendant, Filter Queen. Filter Queen sold these vacuum cleaners to plaintiffs and other members of the general public by retail installment contracts obtained

after home demonstrations. As part of the agreement to purchase the vacuum cleaners, each purchaser also signed and received a document entitled "Owner's Dividend Certificate" containing a referral sales plan, whereby the purchaser is to receive money from Filter Queen to assist in the payments on the installment contracts. To receive these sums or dividend checks, the purchaser must supply information about friends and acquaintances who consent to receive a Filter Queen salesman in their home.

The first count also alleged that the bank participated in a dealer agreement with Filter Queen, whereby the bank agreed to finance the sales of the vacuum cleaners under the Master Charge credit system, and holds and collects on these contracts that were created by means of misrepresentations and unfair and unlawful business practices. The bank participates in the Master Charge system of credit through its membership in Western States Bankcard Association, the central coordinating unit for the Master Charge system of credit.

Count 2 of the first cause of action of the amended complaint alleged that with intent to induce plaintiffs and the general public to enter into the purchase of its vacuum cleaners, Filter Queen made and continued to make untrue and misleading statements, including that each purchaser solicited by telephone had won a Mustang automobile when, in fact, he only had won a $5 prize, payable only if he consented to a home demonstration; that the home demonstration was part of a new advertising campaign and that the value of the cleaner was $345 and that the purchaser would be paid a dividend.

Count 5 of the first cause of action alleged that the bank had actual or constructive knowledge of the unlawful misrepresentations and business practices of Filter Queen and despite this knowledge engaged in the furtherance of illegal activities in violation of Civil Code section 3369: the facilitation of the creation of contracts for the purchase of Filter Queen vacuum cleaners was induced by the fraud, misrepresentation and illegal practices of Filter Queen; and the collection or enforcement of these contracts was induced by the fraud, misrepresentation and illegal practices of Filter Queen.

Count 6 realleged the above mentioned misrepresentations made by Filter Queen, the close connection between Filter Queen, and the bank, and further alleged that the bank, through the Master Charge system of credit, held and collected on contracts created by means of misrepresentations and unfair and unlawful business practices of Filter Queen.

The second cause of action alleged that pursuant to Code of Civil Procedure section 382, plaintiffs brought a class action on behalf of themselves and all other persons similarly situated against the bank; and that "The class is composed of all persons who have signed a retail installment contract to purchase a vacuum cleaner from defendant FILTER QUEEN, who have received an 'Owner's Dividend Certificate' from defendant FILTER QUEEN, and whose installment contracts have been assigned to defendant AVCO THRIFT or defendants DOES XIV through XX *or who are originally obligated on the contract directly to* defendants CROCKER CITIZENS NATIONAL BANK, UNITED CALIFORNIA *Bank,* or Does XXI through XXV. The members of the class are readily ascertainable from the records of defendants. There is a well-defined community of interest in the questions of law and fact involved, affecting all members of the class. *The named plaintiffs are representative of the class and will adequately and fully represent the interests* of each member of the class in the common issues of law and fact to be litigated. The parties are numerous and unknown to plaintiffs; it is impractical to bring them all before the court; and allowing this action to be brought as a class action will avoid multiplicity of lawsuits" (italics added).

The complaint indicated that of the individual plaintiffs, Floyd and Leatha Payne signed a contract with Filter Queen on May 2, 1968; Julio and Josephine Hernandez on April 24, 1968; and Henry and Viola Eden on June 29, 1968. One of the grounds urged in the bank's demurrer was that the six named plaintiffs did not participate in any transaction involving the use of Master Charge cards and, therefore, there was no allegation that plaintiffs had any standing to sue the bank. Filter Queen alleged that it used the Master Charge system through the bank from November 11, 1968, to December 18, 1968. In their answers to the bank's interrogatories and request for admissions, plaintiffs admitted that none of the allegations of the complaint relate to a Master Charge card transaction, and that the individuals named in the complaint were not holders of Master Charge cards.

The court's order indicated that as to counts 2, 5 and 6 of the first cause of action, the demurrer was sustained without leave to amend for failure to state facts sufficient to constitute a cause of action; as to the second cause of action, for failure to state sufficient facts to constitute a class action as it affirmatively appeared there was no community of interest.

At the outset, we are faced with an admitted defect that appears on the face of the complaint against the bank, namely, that although plaintiffs purchased vacuum cleaners from Filter Queen on retail installment

contracts, all of their contracts were signed at least four and one-half months before November 1968, when Filter Queen entered into the Master Charge agreement with the bank.

■ Plaintiffs admit the defect as to their first cause of action as individuals. They urge, however, that they had standing to sue as private attorneys general on behalf of defrauded members of the public pursuant to Civil Code section 3369,[1] and Business and Professions Code section 17535.[2] Both statutes are designed to restrain "future conduct" that is likely to deceive or mislead the public.

The further question here presented, however, is whether the bank's acts of enforcing its Master Charge agreements that were used to finance Filter Queen vacuum cleaners between November 11 and December 18, 1968, can be enjoined pursuant to Civil Code section 3369 and Business and Professions Code section 17535. Clearly, the statutes by their terms authorize only the particular kinds of injunctive relief specified. Relief in the form of forfeiture, rescission or damages cannot be predicated on these two statutes.

The equitable relief authorized by Civil Code section 3369 is not circumscribed by any prerequisite that the conduct in question be limited to

---

[1]"1. Neither specific nor preventive relief can be granted to enforce a penalty or forfeiture in any case, nor to enforce a penal law, except in a case of nuisance or unfair competition.

"2. Any person performing or proposing to perform an act of unfair competition within this State may be enjoined in any court of competent jurisdiction.

"3. As used in this section, unfair competition shall mean and include *unlawful,* unfair or fraudulent business practice and unfair, untrue or misleading advertising and any act denounced by *Business and Professions Code Sections 17500 to 17535, inclusive.*

"4. As used in this section, the term person shall mean and include natural persons, corporations, firms, partnerships, joint stock companies, associations and other organizations of persons.

"5. Actions for injunction under this section may be prosecuted by the Attorney General or any district attorney in this State in the name of the people of the State of California upon their own complaint or upon the complaint of any board, officer, person, corporation or association or by any person acting for the interests of itself, its members or the general public."

[2]Business and Professions Code section 17500 et seq. prohibit all kinds of misleading and untrue advertisements and statements. This section parallels subdivisions 4 and 5 of Civil Code section 3369, and provides: "Any person, corporation, firm, partnership, joint stock company, or any other association or organization which violates or proposes to violate this chapter may be enjoined by any court of competent jurisdiction.

"Actions for injunction under this section may be prosecuted by the Attorney General or any district attorney in this State in the name of the people of the State of California upon their own complaint or upon the complaint of any board, officer, person, corporation or association or by any person acting for the interests of itself, its members or the general public."

the field of business competition. The statute is based not alone on the property right of the complainant but the right of the public to protection from fraud and deceit. What constitutes "unfair competition" or "unfair or fraudulent business practice" under any given set of circumstances is a question of fact, the essential test being whether the public is likely to be deceived (*People* ex rel. *Mosk* v. *National Research Co. of Cal.*, 201 Cal. App.2d 765, 771-772 [20 Cal.Rptr. 516]). Unfair competition means and includes unfair or fraudulent business practice and unfair, untrue or misleading advertising and any act denounced by Business and Professions Code sections 17500-17531 (*Reachi* v. *Edmond* (9th Cir. 1960) 277 F.2d 850, 854).

Both Civil Code section 3369 and Business and Professions Code section 17500 have been applied only to enjoin specific practices that are deceptive and unfair on their face, such as: the use of forms that closely resembled those used by certain state agencies (*People* ex rel. *Mosk* v. *National Research Co. of Cal.*, *supra*); appropriating the name or property of another (*Capital Records, Inc.* v. *Erickson*, 2 Cal.App.3d 526 [82 Cal.Rptr. 798, 40 A.L.R.3d 553]; *H. A. Friend and Company* v. *Friend and Company*, 276 F.Supp. 707); misuse of confidential information (*Ojala* v. *Bohlin*, 178 Cal.App.2d 292 [2 Cal.Rptr. 919]; *Mary Doe Enterprises, Inc.* v. *Central Valley Professional Exchange, Inc.*, 212 Cal. App.2d 577 [28 Cal.Rptr. 158]; *Southern Cal. Disinfecting Co.* v. *Lomkin*, 183 Cal.App.2d 431 [7 Cal.Rptr. 43]). The statute affords protection against the probability or likelihood as well as the actuality of deception or confusion (*Hair* v. *McGuire*, 188 Cal.App.2d 348 [10 Cal.Rptr. 414]).

The bank's conduct of enforcing or collecting on its Master Charge contracts used to finance Filter Queen purchases between November 11 and December 18, 1968, is not conduct that, on its face, is likely to deceive or mislead the public. Rather, the bank's conduct consists of the collection or enforcement of an agreement that appears legal on its face. The fact that defenses may be asserted to the enforcement of the agreement does not mean that the bank's conduct, as such, constitutes a *practice* that is deceptive or misleading in nature and, therefore, enjoinable by the above statutes. Unquestionably, there may be harm to the public from the enforcement of agreements induced by fraudulent representations and promoted by misleading advertisements; however, this harm is not the focus of the injunctive relief afforded by Civil Code section 3369 and Business and Professions Code section 17535. As indicated above, these sections restrict the drastic remedy to specific *types of business practices* that are unlawful and unfair per se. Arguably, the use of Civil Code section 3369 urged by plaintiffs could result in the penalty or forfeiture prohibited by

the first section, e.g., penalizing the bank for failure to carefully scrutinize and evaluate the contracts financed by its Master Charge system.

We conclude that since the bank's collection on or enforcement of its Master Charge agreements does not constitute the kind of deceptive conduct enjoinable under Civil Code section 3369 and Business and Professions Code section 17535, plaintiffs cannot maintain their first cause of action as private attorneys general pursuant to these statutes.

 As to the second cause of action, the class action, plaintiffs contend that they should have been permitted to amend to include a proper member of the class. The record before us indicates that although the matter was timely raised by the demurrer and motion to strike, at no time did plaintiffs make an attempt to amend the complaint to include the name of an indivdual plaintiff, either as a member of the public, or the class who was obligated to the bank on a Master Charge contract for purchase of a vacuum cleaner from Filter Queen between November 11 and December 18, 1968, the period of time when the agreement between Filter Queen and the bank was in effect.[3]

Plaintiffs cite *Klopstock* v. *Superior Court,* 17 Cal.2d 13 [108 P.2d 906, 135 A.L.R. 318], wherein a stockholder's representative action on behalf of the corporation was brought by the executor of the will of the widow of a deceased stockholder. On appeal, the court reversed judgment in favor of the plaintiff on grounds that the husband's estate was the proper party plaintiff. After remittitur, the trial court granted the motion of the widow's executor to substitute as plaintiff, a stranger to the action, the personal representative of the husband. The defendants sought mandamus to compel dismissal and the Supreme Court held that the amendment was properly allowed, stating at page 20: "In determining whether a wholly different cause of action is introduced by the amendment technical considerations or ancient formulae are not controlling; nothing more is meant than that the defendant not be required to answer a wholly different legal liability or obligation from that originally stated."

*Klopstock* is frequently cited for the proposition that an action by the wrong party plaintiff can be saved by an amendment to bring in the proper party plaintiff (*Worthington* v. *Kaiser Foundation Health Plan, Inc.,* 8 Cal.App.3d 435, 448 [87 Cal.Rptr. 272]). Plaintiffs, however, have cited no authorities holding that a plaintiff who has no standing to sue the particular defendant should be permitted to amend the complaint,

[3]The record indicates that apparently at least one such person, Mrs. Bolton, was known to plaintiffs since she signed one of the declarations attached to the pleadings.

in the absence of a timely motion, to add or substitute party plaintiffs.[4] In *Klopstock,* as well as the other cases noted below, a proper and timely motion was made to include as a plaintiff a person with the requisite standing.

The same is true of *Cal. Gas. Retailers* v. *Regal Petroleum Corp.,* 50 Cal.2d 844 [330 P.2d 778], on which plaintiffs also rely. In *Gas. Retailers,* the original plaintiff in a class action for violations of the Unfair Trade Practices Act (Bus. & Prof. Code, §§ 17000-17101) and fraudulent and misleading advertising, was a nonprofit corporation consisting of members distributing the products of the major oil companies, the defendants. The trial court permitted the amendment of the complaint after the conclusion of the trial to include as party plaintiff Mr. Hudson, the president and a member of the original corporate plaintiff. The Supreme Court noted at page 850: "It appears that the interest of plaintiff corporation and its members may fall within the rule of *Parker* v. *Bowron,* 40 Cal.2d 344, 352, 353 [254 P.2d 6]: 'The statutory provision [Code Civ. Proc., § 382] is based upon the doctrine of virtual representation and is an exception to the general rule of compulsory joinder of all interested parties. (*Weaver* v. *Pasadena Tournament of Roses Assn.,* 32 Cal.2d 833, 837 [198 P.2d 514].) It is a codification of "the common law theory of convenience to the parties when one or more fairly represent the rights of others similarly situated who could be designated in the controversy." (*Fallon* v. *Superior Court,* 33 Cal.App.2d 48, 50 [90 P.2d 858].) "[R]egardless of which of the alternative conditions of the statute is invoked as authorizing a class proceeding, it has been uniformly held that there must be a well-defined 'community of interest' in the questions of law and fact involved as affecting the parties to be represented." (*Weaver* v. *Pasadena Tournament of Roses Assn., supra; Jellen* v. *O'Brien,* 89 Cal.App. 505, 509 [264 P. 1115].)

" 'No facts have been alleged to bring Parker within this well established rule regarding class suits. He does not claim to be a member of the interested class, and there is nothing to indicate that he is "similarly situated" with those whom he pretends to represent. There can be no "common or general interest" in the subject matter of the controversy (*Weaver* v. *Pasadena Tournament of Roses Assn., supra,* p. 842) be-

---

[4]In *Worthington* v. *Kaiser Foundation Health Plan, Inc., supra,* the action was brought by several co-lessors and the court properly permitted the amendment of the pleading to add one of the co-lessors not named in the original complaint. Similarly, in *Arrowhead Mut. Service Co.* v. *Faust,* 260 Cal.App.2d 567 [67 Cal.Rptr. 325], the plaintiffs sued for the violation of restrictions on the use of land. The court permitted amendment of the complaint to add as plaintiffs the new parties who were successor lot owners of the original plaintiffs and sought to enforce the same legal rights against the defendant as did the original parties.

tween Parker, who is not employed by the city, and city employees. Parker cannot give himself standing to sue by purporting to represent a class of which he is not a member.'

"In other words, if the rule of *Parker* v. *Bowron, supra,* 40 Cal.2d 344, 352, 353, is strictly applied, there is no community of interest between plaintiff and its members and they are not 'similarly situated' since plaintiff is complaining of the inability of its members to pay dues and assessments, and the members are alleged to have been injured by defendants through loss of business. It would thus appear that plaintiff corporation is not a proper party plaintiff."

The Supreme Court held that under *Klopstock* and the rule of liberal interpretation of Code of Civil Procedure section 473, the timely amendment to include Mr. Hudson as a party plaintiff had the effect of curing the original defective pleading. As the record here reveals no similar timely motion to include a proper party plaintiff, the *Gas. Retailers* case is distinguishable.

■ The question of standing to sue is one of the right to relief and goes to the existence of a cause of action against the defendant (cf. *Los Angeles Fire & Police Protective League* v. *Rodgers,* 7 Cal.App.3d 419, 423 [86 Cal.Rptr. 623]). Where the complaint states a cause of action in someone, but not in the plaintiff, a general demurrer for failure to state a cause of action will be sustained (*Parker* v. *Bowron,* 40 Cal.2d 344, 351 [254 P.2d 6]).

■ Plaintiffs here further urge that the fatal omission does not affect the class action alleged by their second cause of action, pursuant to Code of Civil Procedure section 382. However, the existence of a community of interest between members of the class with regard to the questions of law and fact involved is essential (*Vasquez* v. *Superior Court, supra*).[5] Plaintiffs, citing *Vasquez,* at page 813, argue that all that is required is a "reasonable possibility" that they can establish a prima facie community of interest among class members.

Even so, the amended complaint does not set forth sufficient facts to bring plaintiffs under the "reasonable possibility" rule regarding representative actions. There is nothing to indicate that plaintiffs are members of the interested class, namely, persons who were defrauded by Filter Queen by means of financing supplied through Master Charge system by the bank. Thus, plaintiffs do not belong to the class whom they purportedly repre-

---

[5]*Vasquez* held that pursuant to Code of Civil Procedure section 382, consumers may bring suit as a class to seek relief and redress for damages sustained as the result of false representations against both the sellers and the finance company to which the installment contracts were assigned.

sent.[6] Plaintiffs cannot give themselves standing to use by purporting to represent a class of which they are not a member (*Greater Westchester Homeowners' Assn., Inc.* v. *City of Los Angeles,* 13 Cal.App.3d 523, 526 [91 Cal.Rptr. 720]).

■ We are aware that Code of Civil Procedure section 473 is to be liberally construed in furtherance of justice; however, the liberal rule of construction does not permit the amendment of a defective complaint where no named plaintiff had standing to sue the defendant,[7] and where the record shows no attempted amendment to include a proper party plaintiff. As plaintiffs had not purchased vacuum cleaners financed by Master Charge contracts by the bank and failed to present any amendment to include such a person, we must conclude that the demurrer to the first and second causes of action of the complaint were properly sustained without leave to amend. Accordingly, we do not reach the interesting substantive question of the bank's liability under *Vasquez,* extensively briefed by the parties.

The judgment is affirmed.

Kane, J., and Rouse, J., concurred.

---

[6]The leading federal case, *Siegel* v. *Chicken Delight, Inc.* (D.C. Cal. 1967) 271 F.Supp. 722, is of no help to plaintiffs here. *Chicken Delight* was a treble damages anti-trust class action brought by 5 of approximately 650 franchisees against the franchisor for conspiracy and restraint of trade, monoloply, etc. In response to the franchisor's argument that there were insufficient common questions of law and fact to constitute a proper class action, the court pointed to "a common nucleus of operative facts" (p. 726) and took cognizance (at p. 727) of an advertising brochure that was used in all or substantially all of the alleged misrepresentations made by the franchisor. Plaintiffs here, noting the "common document" approach urge that the class here consists of all persons who have received an owner's certificate from Filter Queen and that if the class is viewed in such a broad fashion, they should have been permitted to amend their complaint to include one of the narrower class, namely, persons who had financed the purchase of a Filter Queen vacuum cleaner by means of a Master Charge contract through the bank. We have already indicated above the absence of any such specific motion to amend in the record. With the elimination on appeal of all defendants except the bank, the common document would be the Master Charge contract.

[7]On oral argument, plaintiffs asserted that *La Sala* v. *American Sav. & Loan Assn.,* 5 Cal.3d 864 [97 Cal.Rptr. 849, 489 P.2d 1113], decided after the briefs were here filed, held that they should have been given an opportunity to amend to add a new plaintiff that suitably represented the class. We think, however, that *La Sala* is clearly distinguishable on its facts. There, unlike the instant case, the plaintiffs were at the commencement of the action proper representatives of the class. Accordingly, at that time they became fiduciaries for the entire class. Further, the Supreme Court in *La Sala* at page 875 stated the principle on which we here rely: "The cases uniformly hold that a plaintiff seeking to maintain a class action must be a member of the class he claims to represent."