**H & J FOODS, INC., Plaintiff-Appellee,**

v.

**Gail REEDER, dba Nutrifoods Co., Defendant-Appellant.**

**No. 71–1669.**

United States Court of Appeals, Ninth Circuit.

April 25, 1973.

---

Francis A. Utecht (argued), Fulwider, Patton, Rieber, Lee & Utecht, Long Beach, Cal., for defendant-appellant.

James W. Geriak (argued), James J. Short, Lyon & Lyon, Los Angeles, Cal., for plaintiff-appellee.

Before CHAMBERS, HAMLEY,[1] and GOODWIN, Circuit Judges.

## OPINION

CHAMBERS, Circuit Judge:

"Hunza" seems to be a word with some sales appeal when exploited in the rapidly growing health foods business.

A small operator, Floyd Hampson, who was using the name of Hunza for some of his products, registered the name as a trademark in the United States Patent Office in 1957.[2] It was registered for: "Vitamin-Mineral Food Supplement, including Herbs and Grasses, in Powdered, Tablet and Tea Forms." Hampson's early advertising, before the health food business generally burgeoned, is marvelous. According to his

---

1. Circuit Judge Hamley has not participated in the within opinion, being temporarily disabled.

2. United States Patent Office Trademark Registration No. 644,085.

claims, the Hunzas were a healthy little tribe of agrarians in the high mountains of Asia where the soil is especially rich and unique. Hampson had found himself a similar Eden, a farm near Cherry Creek hard by the little town of Duvall, Washington. There mud on the farm had the texture of hand cream. There Hunza grass was grown, but not allowed to mature. Its tender shoots were cut with a field chopper. Then it was idyllically processed by flash dehydration. One might remain lost in the puffery, except the great product, never touched by human hands, came down to reality with the postscript notation: "Does not contain alfalfa."

Maybe Hampson was before his time (or maybe he just did not live in Southern California where one's odd dreams can often be richly exploited), but he did not do well financially with his "great" product. Eventually in 1968 he sold his dreams and the trademark to Herman Jacobs, one of the owners of H & J Foods, Inc., for $500.00. Jacobs turned it over to the company. Tangibly, in addition to the copyright, there came along a lot of Hampson's unused labels.

But somehow, someway, one Rowe, the predecessor of Reeder, the defendant, operating as Nutrifoods Co. in Southern California, became aware of the legend of Hunza and he started producing health foods, labelling them Hunza®. The printer's bug ® is the historical symbol for a registered trademark. Neither Rowe nor Reeder ever attempted to register Hunza as a trademark. (H & J is also a Southern California food producer.)

█ Within a few months after the purchase, H & J had sued Reeder, seeking an injunction and an accounting of profits. The first count was for trademark infringement. The second was a pendent count for unfair competition. H & J Foods, Inc., received a judgment against Reeder of $26,519.07 plus interest and heavy costs, which included attorney fees of $14,040.00. The attorney fees are allowable under California's statutory law on unfair competition. Fleischmann Distilling Corp. v. Maier Brewing Company, 386 U.S. 714, 87 S. Ct. 1404, 18 L.Ed.2d 475 (1967); Friend v. H. A. Friend & Co., 416 F.2d 526 (9th Cir. 1969).

On this appeal, the whole result is attacked. We affirm the granting of the injunction, but hold that the assignment carried no right to profits before the date of the assignment. Further, this result will necessarily require a heavy reduction in the attorney fees allowed. Also, some adjustment will have to be made in the amount assessed as the cost of the accounting.

Reeder does not challenge the validity of Hampson's registration of "Hunza." He does, however, challenge the assignment of the mark to Jacobs. Most of his objections are to the district court's findings of fact.

█ The claim that Reeder presses most vigorously is that the assignment was invalid because it was "in gross," and an assignment apart from the business with which the mark has been associated. See Mister Donut of America v. Mr. Donut, Inc., 418 F.2d 838 (9th Cir. 1969), and 15 U.S.C. § 1060.

While Hampson did not transfer much except the trifling amount of goodwill along with his trademark, the reason was that he had little else to transfer in the way of tangible assets related to "Hunza." The district court found that "Herman Jacobs contacted Hampson and by assignment August 7, 1968, purchased from Hampson for $500 all right, title and interest in and to the trademark 'Hunza,' including the right to sue for past infringements, together with the goodwill of the business symbolized and appurtenant to the mark, Registration No. 644,085, and a quantity of 'Hunza' labels, advertising news releases, and promotional materials."

Except as to past infringement, we believe the court's finding is supported by the evidence, and is therefore proper. Hampson gave up the right to use the mark, "Hunza," and Jacobs acquired all

of Hampson's related tangible assets of any conceivable value. In this case, this was sufficient. Cf. Sterling Brewers, Inc. v. Schenley Industries, Inc., 441 F. 2d 675 (C.C.P.A.1971).

■ Reeder further contends that H & J has used the "Hunza" mark on products so dissimilar to the registration specifications that the mark is invalid. Although we might have found differently, the district court found substantial similarity, and we do not believe that finding is clearly erroneous.

■ On H & J's pendent claim arising under California's unfair competition law, the court found that the public was likely to be deceived by Reeder's use of the mark "Hunza," and the bug,®. We express no opinion on the validity of the finding to the extent it involves use of ®. The finding of deception based on use of "Hunza" alone is sufficient, and it is supported by the evidence. See Payne v. United California Bank, 23 Cal.App.3d 850, 100 Cal.Rptr. 672 (1st Dist.1972). A specific finding of "palming off" was not necessary.

■ Much of the award stems from damages for infringement by Reeder prior to the assignment from Hampson to Jacobs. Such pre-assignment damages are disfavored, and they are allowed only when the right to sue is clearly spelled out in a valid assignment. George W. Luft Co., Inc., v. Zande Cosmetic Co., Inc., 142 F.2d 536 (2d Cir. 1944). Here, the only evidence of Hampson's intent to assign the right to sue for past infringement is the following statement of Herman Jacobs. "[Hampson] also gave a remark. He said, 'If you get the mark, you can sue that guy in Tulsa, Oklahoma, Akin [a former partner of Reeder], because he is using the mark illegally.' " We do not pass on the question whether this parol evidence was properly admitted. We do feel, however, this kind of testimony is insufficient to entitle H & J to pick up pre-assignment damages. The language, if admissible, is not express enough. This conclusion will have a heavy impact on the amount of damages, and as above indicated, the district court must reconsider on remand the amount of attorneys' fees and the amount of costs.

The district court was not clearly erroneous in its implicit rejection of Reeder's "clean hands" argument.

As an epilogue, we note that probably counsel would have served their clients just as well without overridiculing each others' briefs. The briefs, perchance, were written for their respective clients, not us.

The judgment is affirmed as to the granting of the injunction. Otherwise, the judgment is remanded for proceedings consistent with this opinion.

Each side will bear its own costs of the appeal.