[No. G036235. Fourth Dist., Div. Three. Jan. 25, 2007.]

JAMES LALIBERTE et al., Plaintiffs and Appellants, v.
PACIFIC MERCANTILE BANK, Defendant and Respondent.

COUNSEL

Arias, Ozzello & Gignac, H. Scott Leviant, Mike Arias, Mark A. Ozzello; Newmeyer & Dillion, Shane E. Coons and Thomas F. Newmeyer for Plaintiffs and Appellants.

Sheppard, Mullin, Richter & Hampton, Alan H. Martin, Robert S. Beall, David Huebner and Jeffrey M. Blank for Defendant and Respondent.

OPINION

**ARONSON, J.**—Plaintiffs James LaLiberte and Jann and Dennis O'Connor appeal the trial court's orders sustaining demurrers to class allegations without leave to amend. Plaintiffs contend they should have been allowed to further amend their class definition or to conduct further discovery to identify an adequate class representative. Plaintiffs also contend the trial court erred in ruling that rescission is unavailable as a class remedy for violations of the Truth in Lending Act (TILA) (15 U.S.C. § 1601 et seq.)[1] and regulation Z, implementing TILA.

We agree the trial court erred in denying plaintiffs leave to amend the class definition in their third amended complaint, but conclude it correctly denied

---

[1] All statutory references are to title 15 of the United States Code, unless otherwise indicated.

plaintiffs leave to amend the class action rescission claim in their second amended complaint.

I

## FACTUAL AND PROCEDURAL BACKGROUND

In April 2002, plaintiffs applied to defendant Pacific Mercantile Bank (PMB) for refinance loans secured by their principal residences. In connection with the loans, PMB provided plaintiffs with disclosure statements purporting to include the disclosures required by TILA. The statements, however, failed to disclose closing fees of $450 charged in each of the loans. Plaintiffs allege this omission violated TILA.

Plaintiffs filed suit against PMB on May 22, 2003. The initial complaint included only individual claims. On November 21, 2003, plaintiffs amended their complaint to include class allegations, listing two subclasses of persons who obtained certain PMB loans, and either failed to receive, or received inaccurate, TILA disclosures. One subclass included persons who obtained loans "during the period from May 22, 2002 to the present." The other subclass included persons who obtained loans "during the period from May 22, 2000 to the present."[2] The trial court sustained demurrers to the first amended complaint, concluding the class allegations failed to allege sufficient common facts to constitute a single class.

Plaintiffs' second amended complaint alleged four subclasses, two including persons who obtained loans after May 22, 2000, and two including persons who obtained loans after May 22, 2002. PMB again demurred, and filed a motion to strike contending, inter alia, the statute of limitations ceased running on class claims not when the complaint was filed on May 22, 2003, but when plaintiffs first included a class claim in their first amended complaint on November 21, 2003. In opposition to the motion to strike, plaintiffs agreed to amend the class definitions to include only persons who obtained loans after November 21, 2002, for subclasses seeking damages, and after November 21, 2000, for subclasses seeking rescission.

The trial court sustained demurrers to the second amended complaint with leave to amend on class claims seeking statutory damages, but denied leave

---

[2] Presumably, these dates were determined by the initial complaint's filing date and the one-year statute of limitations for seeking statutory damages under TILA (§ 1640(e)), and the three-year limitation for rescission under TILA (§ 1635(f)).

on class claims seeking rescission, concluding rescission was an individual remedy and therefore unavailable in a class action. The court explained that the class allegations in the second amended complaint were too generic, and that "plaintiff needs to identify the specific provisions of defendant's instruction manuals or policies which led to the violations of the TILA plaintiff has alleged."

Plaintiffs' third amended complaint eliminated subclasses, and defined the single class as follows: "All persons who obtained a closed-end loan from Pacific Mercantile Bank primarily for personal, family or household purposes secured by either real property or the borrower's principal dwelling during the period from November 21, 2002 to the present." The complaint alleges that PMB had provided neither the named plaintiffs nor the class members a disclosure statement reflecting the closing fee charged in connection with their loans. By amending the class definition to include only those persons who obtained loans after November 21, 2002, plaintiffs eliminated PMB's argument that some of the class claimants were time-barred. But PMB lodged a new objection to the amendment, arguing that the class representatives—who obtained their loans in April 2002—were no longer members of the class.

The trial court granted PMB's demurrer to the class allegations of the third amended complaint without leave to amend on the sole ground that plaintiffs were not members of the class they purported to represent. The court's ruling did not affect plaintiffs' individual claims against PMB. Plaintiffs now appeal the trial court's order denying leave to amend the class claims in the third amended complaint, and its order sustaining demurrers to plaintiffs' class claims seeking rescission.

II

STANDARD OF REVIEW

An order sustaining demurrers to class action allegations "is appealable to the extent that it prevents further proceedings as a class action." (*Wilner v. Sunset Life Ins. Co.* (2000) 78 Cal.App.4th 952, 957, fn. 1 [93 Cal.Rptr.2d 413].) In reviewing a trial court's order sustaining a demurrer, we exercise our independent judgment on whether a cause of action has been stated as a matter of law. (*Montclair Parkowners Assn. v. City of Montclair* (1999) 76 Cal.App.4th 784, 790 [90 Cal.Rptr.2d 598].) A trial court's denial of leave to amend, however, is reviewed for abuse of discretion. Plaintiffs bear the burden of proving the trial court abused its discretion and must demonstrate

the proposed amendment states a cause of action. (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349 [134 Cal.Rptr. 375, 556 P.2d 737].)

## III

### Discussion

A. *The Trial Court Abused Its Discretion in Denying Leave to Amend*

In sustaining demurrers to the third amended complaint without leave to amend, the trial court held: "Because the named Plaintiffs were never a member of the class they purport to represent, they have no standing to sue on its behalf. 'Where the complaint states a cause of action in someone, but not in the plaintiff, a general demurrer for failure to state a cause of action will be sustained.' (*Payne v. United California Bank* (1972) 23 Cal.App.3d 850 [100 Cal.Rptr. 672].) On the face of the complaint it is undisputed that plaintiffs were never members of the interested class. Thus, plaintiffs do not belong to the class whom they purportedly represent and cannot give themselves standing to sue by purporting to represent a class of which they [were] never a member."

Plaintiffs contend the trial court's reliance on *Payne v. United California Bank, supra*, 23 Cal.App.3d 850 (*Payne*), was misplaced, and that *La Sala v. American Sav. & Loan Assn.* (1971) 5 Cal.3d 864 [97 Cal.Rptr. 849, 489 P.2d 1113] (*La Sala*) compels reversal. We agree.

In *La Sala*, the plaintiff borrowers brought a class action against a lender, alleging that the lender's trust deed form included a provision permitting acceleration if the borrower executed a junior encumbrance on the secured property. After the lender offered to waive the provision as to the named plaintiffs, the trial court dismissed the action, determining that the plaintiffs no longer represented the class because they had received full relief. The Supreme Court reversed, concluding that the plaintiffs should have been given the opportunity to add new class representatives by amendment, even though the lender's waiver removed plaintiffs from the class they purported to represent. (*La Sala, supra*, 5 Cal.3d at p. 868.)

*La Sala* then addressed the lender's arguments regarding alternative grounds for affirming the trial court's order. One of these arguments— virtually identical to PMB's contention—was that the plaintiffs were never members of the class defined in their complaint. The *La Sala* plaintiffs defined the class as those borrowing money from the lender " 'during the four

years immediately preceding the filing of this action.' " (*La Sala, supra*, 5 Cal.3d at p. 874.) Because the plaintiffs borrowed money six and 11 years before they filed the action, the Supreme Court acknowledged the plaintiffs never qualified as class members. (*Ibid.*) The court nonetheless recognized that the named plaintiffs shared " 'a well-defined "community of interest" in the questions of law and fact involved,' " because they were all persons against whom the lender had threatened to enforce its due-on-encumbrance clause. (*Id.* at p. 875.) The court viewed the time restriction in the complaint as arbitrary, and that the community of interest in the litigation's subject matter extended beyond any four-year period and "encompasses all borrowers, including plaintiffs, who have been threatened with acceleration under the due-on-encumbrance clause within the period of the statute of limitation." (*Ibid.*) The court concluded: "In sum, plaintiff's nonmembership in the class defined by the complaint stems not from the lack of a community of interest between plaintiffs and the class, but from arbitrary and inadvertent limitation of the class. [Fn. omitted.]" (*Ibid.*) Because the plaintiffs could easily cure the pleading defect by amendment, the court held it would be an abuse of discretion to deny leave to amend. (*Id.* at p. 876.)

*La Sala*'s reasoning applies here as well. In their third amended complaint, plaintiffs allege that they obtained their loans in April 2002, and defined the class members as those obtaining loans after November 21, 2002. The complaint, however, alleges PMB failed to disclose closing fees charged to both the named plaintiffs and the class members. Because dates on which they obtained their loans do not in any way affect the community of interest alleged between the named plaintiffs and class members, it is of no significance.

In response to PMB's demurrer to the third amended complaint, plaintiffs asserted they could change the class definition to the following: " 'James LaLiberte, and Dennis and Jann O'Connor, and all persons who obtained a closed-end loan from Pacific Mercantile Bank primarily for personal, family or household purposes secured by either real property or the borrower's principal dwelling during the period from November 21, 2002 to the present.' "[3] PMB decries this proposed amendment as advancing a "novel theory" which would allow someone having nothing in common with other class members to become a class representative by simply adding his or her name to the class definition. True, one may become a class member by adding his or her name to the class. Doing so, however, does not ipso facto

---

[3] Alternatively, plaintiffs asked the trial court to allow them to take discovery to find a suitable class representative. Because we determine plaintiffs' requested amendment will make them members of the class, we do not consider whether the trial court should have allowed discovery to ascertain other potential class representatives.

make that person an adequate class representative. The named plaintiffs' adequacy as class representatives in the present case derives from the community of interest in the law and facts involved in the case, not merely because they add themselves to the class definition.

The trial court's reliance on *Payne* was misplaced. There, the plaintiffs sued a bank over its agreement with a vacuum cleaner company, Filter Queen, to finance consumers' purchase of vacuum cleaners. The plaintiffs alleged the bank, because of its financing agreement, participated in Filter Queen's fraudulent and unlawful business practices. The complaint alleged the plaintiffs purchased vacuum cleaners between April and June 1968. As plaintiffs discovered, however, the bank had not begun its financing arrangement with Filter Queen until November 1968. Thus, none of the named plaintiffs had a claim against the bank. *Payne* upheld the trial court's dismissal of the action, noting that the plaintiffs did not have standing to sue the bank because they never were members of the class they purported to represent and had failed to timely seek amendment to add a qualified class representative. (*Payne, supra*, 23 Cal.App.3d at pp. 852, 859.)

The present case is distinguishable from *Payne*. In *Payne*, the plaintiffs' purchase of their vacuum cleaners *before* the bank's involvement with Filter Queen demonstrated they could not pursue even an individual claim against the bank. Thus, regardless of how the class might be redefined, the plaintiffs could never demonstrate a community of interest with the other class members. Unlike *Payne*, the named plaintiffs in the present case have standing to bring individual claims mirroring those of the class members. Per *La Sala*, the fact that the named plaintiffs' claims arose earlier than those of the other class members is legally insignificant. Moreover, unlike the plaintiffs in *Payne*, the named plaintiffs here properly requested amendment in their opposition to the demurrers.

We conclude the trial court abused its discretion in denying plaintiffs leave to amend their third amended complaint. Our decision addresses only the trial court's denial of leave to amend based on its reading of *Payne*. We recognize that PMB raised a number of other issues in its demurrers to the third amended complaint, and we express no opinion on their merit.

B. *Plaintiffs Cannot Assert Class Claims for Rescission*

In ruling on PMB's demurrers to plaintiffs' second amended complaint, the court held: "Plaintiffs are denied leave to amend to seek either rescission or a

declaration of entitlement to rescission on the class claims. The court is persuaded by the rationale of the court in *Gibbons v. Interbank Funding Group* (N.D.Cal. 2002) 208 F.R.D. 278, 280–286, that neither form of relief is appropriate in a class action." Plaintiffs contend the trial court erred in denying leave to amend its class action rescission claim. We disagree.

■ No California state court has addressed the question whether a right to rescind under TILA applies on a classwide basis, and the issue remains a matter of sharp debate among other courts.[4] The courts denying classwide rescission interpret section 1635 to provide a personal remedy. (See *Gibbons, supra,* 208 F.R.D. at p. 285.) Under that section, a party seeking to rescind must provide the lender with a notice of rescission. The lender then must, within 20 days, terminate its security interest in the debtor's property, and return to the rescinding party "any money or property given as earnest money, downpayment, or otherwise." (§ 1635(b).) Upon the lender's compliance, the rescinding party must tender to the lender any money or property received in the transaction.

Accordingly, "TILA contemplates that 'individuals must choose to assert the right to rescind, on an individual basis and within individual time frames, before filing suit.' " (*Gibbons, supra,* 208 F.R.D. at p. 285.) Here, plaintiffs do not assert that any of the class members served a notice of rescission, and it is doubtful that most of the class members would even desire this remedy. Thus, it is unclear whether an existing controversy actually would surface between the lender and class members. "Without any rescission requests, nor subsequent denials by defendants, it is not at all clear that a justiciable controversy exists between the class and defendants." (*Ibid.*; see also *Jefferson, supra,* 161 F.R.D. at p. 69.)

■ Courts allowing rescission class claims sidestep the notice issue by ruling that "the filing of the complaint constitutes statutory notice of rescis-

---

[4] Cases holding that rescission under TILA may not be pursued as a class action include: *James v. Home Const. Co. of Mobile, Inc.* (5th Cir. 1980) 621 F.2d 727, 730; *Gibbons v. Interbank Funding Group, supra,* 208 F.R.D. at pages 285–286 (*Gibbons*); *Murry v. America's Mortg. Banc, Inc.* (N.D.Ill., May 5, 2005, No. 03 C 5811) 2005 U.S. Dist. Lexis 11751, 2005 WL 1323364, pages *10–*11; *Jefferson v. Security Pacific Financial Services, Inc.* (N.D.Ill. 1995) 161 F.R.D. 63, 68–69 (*Jefferson*); *Mayo v. Sears, Roebuck & Co.* (S.D.Ohio 1993) 148 F.R.D. 576, 583. Cases allowing TILA rescission claims to be pursued as a class action include: *McKenna v. First Horizon Home Loan Corp.* (D.Mass., 2005) 429 F.Supp.2d 291 (*McKenna*); *Rodrigues v. Members Mortg. Co., Inc.* (D.Mass. 2005) 226 F.R.D. 147, 153; *Latham v. Residential Loan Ctrs. of Am., Inc.* (N.D.Ill., May 6, 2004, No. 03 C 7094) 2004 U.S. Dist. Lexis 7993, 2004 WL 1093315; *McIntosh v. Irwin Union Bank and Trust, Co.* (D.Mass. 2003) 215 F.R.D. 26, 33; *Williams v. Empire Funding Corp.* (E.D.Pa. 1998) 183 F.R.D. 428, 435–436.

sion . . . ." (*Taylor v. Domestic Remodeling, Inc.* (5th Cir. 1996) 97 F.3d 96, 100; see also *McIntosh v. Irwin Union Bank and Trust, Co., supra*, 215 F.R.D. at p. 32.) To construe the mere filing of a class action complaint as a statutory notice of rescission, however, would trigger the lender's obligation to terminate its security interest in all of the class members' property, and could trigger the class members' obligation to tender the money or property received back to the lender. Unlike class actions seeking damages or an injunction, rescission under TILA creates obligations between the lender and the borrower. We agree with those courts that hold rescission under TILA is a personal remedy not suitable for class action treatment.

Moreover, Congress has expressly provided for class actions under section 1640, governing statutory damages, and has never amended section 1635, governing rescission, to include any mention of class actions. In particular, section 1640 was amended in 1974 to cap damages recoverable in a class action. The provision currently provides that "the total recovery . . . in any class action or series of class actions arising out of the same failure to comply by the same creditor shall not be more than the lesser of $500,000 or 1 per centum of the net worth of the creditor." (§ 1640(a)(2)(B).) The purpose of this limitation was " 'to protect small business firms from catastrophic judgments.' " (*Johnson v. West Suburban Bank* (3d Cir. 2000) 225 F.3d 366, 372, quoting H.R.Conf.Rep. No. 93-1429 (1974).) Although Congress initially enacted a $100,000 class action damages cap, it was raised two years later to $500,000, based on the following reasoning: " 'The recommended $500,000 limit, coupled with the 1% formula, provides, we believe, a workable structure for private enforcement. Small businesses are protected by the 1% measure, while a potential half million dollar recovery ought to act as a significant deterrent to even the largest creditor.' " (*Johnson*, at p. 373, quoting Sen.Rep. No. 94-590, p. 8 (1976).)

Plaintiffs assert we cannot infer congressional intent from its failure to include class action provisions in section 1635. They rely on *McKenna*, which noted: "This court does not find it significant that Congress expressly referred to class actions in connection with setting a damages cap, but did not make a comparable amendment to the rescission statute. It is just as likely that Congress did not intend to in any way limit rescission claims which are designed to put the consumer back in the same position as before the inaccurate information was provided." (*McKenna, supra*, 2005 U.S. Dist. Lexis 41491 at pp. *23–*24.)

We disagree with *McKenna*, and find it difficult to believe that Congress would carefully balance the deterrent effect of class actions under TILA against the potential harm to businesses in the context of statutory damages, and yet allow class action rescission to proceed without any safeguard for the affected business. As noted above, a lender subject to rescission must, within 20 days of receiving a notice of rescission, terminate its security interest in the debtor's property. (§ 1635.) The lender must do so *before* the debtor must tender to the lender any money or property received in the transaction. (*Ibid.*) PMB's secured loan to the O'Connors alone was $375,919.92. Here, 100 class members seeking rescission would mean PMB could face the loss of over $37 million in security upon entry of an unfavorable declaratory judgment. In other words, a declaratory judgment authorizing all class members to rescind their loans could be "catastrophic."

This situation begs the question why Congress would cap recovery on class actions under section 1640, yet not do so for section 1635. The answer is found in the status of case law in 1974 and 1976, when the cap was enacted and increased. During this time period, numerous cases recognized that class actions seeking damages under section 1640 were appropriate, but class actions seeking rescission were virtually nonexistent. (See *Nelson v. United Credit Plan, Inc.* (E.D.La. 1978) 77 F.R.D. 54.) In *Nelson*, the court made the following observation of the situation as it existed in 1978: "[W]e note that there is not a single precedent in which class certification was broached, must less granted or denied, in a case where rescission pursuant to 15 U.S.C. § 1635 was the relief prayed for. While class actions are not discouraged under the Truth-in-Lending Act any more than in other contexts and it appears that Congress intended that some Truth-in-Lending violations would proceed as class actions, we have found no evidence of congressional intent that class treatment is appropriate in actions seeking rescission in the Truth-in-Lending context." (*Nelson*, at p. 58, fns. omitted.) Thus, we believe Congress's failure to address class actions in section 1635 when it amended section 1640 did not demonstrate a desire that rescission class actions proceed without limitation, but reflected the fact that no one had sought to use a class action to obtain rescission.

We conclude the trial court did not err in denying plaintiffs leave to amend their class action rescission claim.

## IV

### DISPOSITION

The order denying plaintiffs leave to amend the class definition in their third amended complaint is reversed. The order sustaining demurrers to plaintiffs' class action rescission claim in the second amended complaint is affirmed. In the interest of justice, each party shall bear its own costs of this appeal.

Sills, P. J., and Rylaarsdam, J., concurred.

A petition for a rehearing was denied February 16, 2007, and appellants' petition for review by the Supreme Court was denied May 9, 2007, S150839.