Filed 2/26/21  P. v. Gillard Ca1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>TODD LAMONT GILLARD JR.,<br><br>        Defendant and Appellant. | A155138<br><br>(Contra Costa County<br>Super. Ct. No. 05-141209-7) |

Defendant appeals from a judgment of conviction, following a jury trial, of shooting at an occupied vehicle, street terrorism, being a felon in possession of a firearm, and resisting arrest.  The trial court found true that defendant suffered a prior serious felony conviction and sentenced him to a total term of 22 years eight months in prison.  On appeal, defendant contends (1) the convictions for shooting at an occupied vehicle and felon in possession of a firearm must be reversed because the prosecutor committed misconduct during closing argument; (2) the one-year enhancement should be stricken; and (3) the case should be remanded to allow the trial court to exercise its discretion to strike the five-year enhancement pursuant to Senate Bill No. 1393 (2017-2018 Reg Sess.).  He also asks this court to conduct an independent review of the trial court's denial of his *Pitchess*[1] motion.

---

[1] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

1

The Attorney General does not oppose an independent review of the *Pitchess* ruling and concedes the one-year enhancement should be stricken, but maintains remand is unnecessary as to the five-year enhancement.

We order the one-year enhancement stricken, remand the matter to the trial court to consider whether to strike the five-year enhancement, and otherwise affirm the judgment.

## BACKGROUND[2]

The district attorney filed informations relating to multiple defendants in two different cases, which were later consolidated by the court. As relevant here, defendant was charged with one count of conspiracy to commit murder (Pen. Code, § 182, subd. (a)(1)[3]—count 1, two counts of street terrorism (§ 186.22, subd. (a)—counts 2 & 5), attempted premeditated, deliberate, and willful murder (§§ 664, subd. (a), 187, subd. (a)—count 3), shooting at an occupied vehicle (§ 246—count 4), felon in possession of a firearm (§ 29800, subd. (a)(1)—count 6), and resisting arrest (§ 148, subd. (a)(1)—count 7). It was further alleged that counts 1, 3, 4, 6, and 7 were committed for the benefit of a criminal street gang (§ 186.22, subds. (b)(1) & (d)); that defendant personally and intentionally discharged a firearm causing great bodily injury in the commission of counts 3 and 4 (§ 12022.53, subds. (b)-(e)(1)); that defendant had previously suffered a serious felony conviction for street terrorism (§§ 667.5, subd. (b), 186.22, subd (a), 1170.12, 667, subds. (a)(1) & (b)-(i)) and had previously suffered a felony conviction which resulted in a prison term (§ 667.5, subd. (b)).

---

[2] Given the nature of the issues raised on appeal, we relay any relevant facts on an issue-by-issue basis below.

[3] All further statutory references are to the Penal Code unless otherwise indicated.

The jury convicted defendant of counts 2, 4, 6 and 7.  It found defendant not guilty on the remaining counts and did not find true the gang and firearm use allegations.  The trial court found true the section 667, subdivision (a)(1) and section 667.5, subdivision (b) allegations.

The trial court sentenced defendant to 22 years eight months in prison, composed of a seven-year upper term for count 4 (shooting at an occupied vehicle) and two consecutive eight-month terms for counts 2 (street terrorism) and 6 (felon in possession of a firearm).  The aggregate term of eight years four months was then doubled to 16 years eight months in accordance sections 667, subdivisions (e)-(i) and 1170.12, to which was added a consecutive five-year enhancement for the section 667, subdivision (a)(1) finding and a consecutive one-year enhancement for the section 667.5, subdivision (b) finding.[4]

DISCUSSION

## Prosecutorial Misconduct

### Background

The victim testified he was on his way to a mall when he noticed a red Camaro driving alongside him.  He saw two people in the car and recognized the front passenger as defendant.  Defendant was "laughing and smiling," but the victim could not tell what the driver was doing.  The victim decided to exit the freeway and saw the Camaro exit behind him.  At an intersection, the Camaro merged into his lane and got directly behind him.  The victim leaned down, looked in his rearview mirror, and saw "a hand out the right passenger window with a pistol."  Then "shots rang from the right side of the

---

[4] The court also imposed a consecutive one-year county jail term for count 7 (misdemeanor resisting arrest) which was "set separately" to the other counts.

3

Camaro at my car." The Camaro circled his car and drove away. He saw that defendant, who had a "smirk" on his face, was still in the front passenger seat of the Camaro. The victim, who had been shot in the "upper left shoulder, back area," drove to the mall and had someone call an ambulance. When officers arrived, the victim told them defendant had shot him.

Defendant testified on his own behalf. According to defendant, he and two friends, whose names he could not recall, were driving to the mall. While on the freeway, the driver and the friend, who defendant said was in the front passenger seat, said someone was staring at them and pointed to the victim. Defendant, recognizing the victim, said, " 'That's just [the victim] from North, he ain't nobody,' like 'Don't even trip off him.' " Defendant went back to playing a game on his phone, when he heard the front occupants say, " 'Watch out.' " He put his head down, "thinking somebody going to start shooting at us." He heard "[r]apid fire, like gunfire" and realized "the shots weren't hitting our car, the shots was really going out." Defendant thought, " 'Oh, they probably getting on them before they getting on us.' " When he realized they shot at the victim, he asked " 'What the fuck y'all do?' " The driver and passenger stated, " 'Man, he was reaching,' " indicating they thought the victim was reaching for a gun. Defendant stated he had known the victim for some time but there had "never been an issue" between the two.

In closing argument, defense counsel stated that one of the prosecution's theories was that defendant aided and abetted the shooting but argued "they presented no evidence. There's nothing that's been presented that [defendant] encouraged, facilitated, said 'Get on 'em. . . .' [¶] And so if there was evidence that [defendant] in some way encouraged or aided or abetted, you could come back under this theory. . . . . [¶] . . . We do know that

4

you do have to live your life with your head on a swivel because somebody can take you down, take you out at any time if you're [defendant]. So people are watching. And they say, 'Why is this guy looking [at] the car, [defendant]?' [¶] 'He's nobody. That's [the victim.]' [¶] Aiding and abetting. So just to be clear, I—I'm not going . . . to spend much time on the jury instruction. Being present doesn't make you an aider or abettor."

During the prosecutor's rebuttal, the following colloquy occurred:

"[Prosecutor:] In addition, the defendant testifies and he puts his credibility at issue. He says: I'm a good and honest man; well other than having a gun when I'm on felony probation. And other than ditching the gun where someone, even a kid, could find it. And lying to the cops when they're looking for guns. And lying to the judge who sent me to prison. And saying I didn't have a gun. And falsely accusing the cops of making that up. Other than that, I am a good and honest man. [¶] . . . [¶]

"The other thing that is frankly ironic about the argument you just heard from the defense is he says, 'Well, he doesn't want to snitch on these guys who were in the car with him on [the day of the shooting].' [¶]

"So here's what you're being asked to believe by the defense. And this is key. You're being asked to believe that he would be willing to get up here, lie under oath to protect other people, but would be honest and tell the truth about things that he did, that he wouldn't lie to protect himself. He's not going to snitch on other people. He's going to not snitch on himself. He's not going to tell the truth if the truth hurts him. If he's willing to lie to protect others, he's willing to lie to protect himself. [¶]

"And frankly, if even the defense credited what the defendant said, remember how the defendant said: 'Oh, this all just kind of happened at the last second. Suddenly, somebody goes "watch out, watch out," and then shooting happened. I had no idea it was going to happen.'

"If the defense wanted you to believe that testimony, and said, 'Oh, well, he was telling the truth about that,' they would have asked for a

5

self-defense or imperfect self-defense instruction. They would have said, 'Well, wait a minute, even if he was involved in what happened'—

"[Defense Counsel]: Objection.

"[Court]: Sustained.

"[Prosecutor]: Okay. But that's how ridiculous the defendant's story is, that suddenly these guys out of the blue, but that's the only evidence. And, again, you have no self-defense or imperfect self-defense instructions.

"[Defense Counsel]: Objection.

"[Court]: Sustained."

### *Analysis*

Defendant maintains the prosecutor committed misconduct by improperly shifting the burden of proof.

The Attorney General asserts defendant forfeited this issue by failing to object on that ground and failing to request a curative admonition.

We agree the issue was forfeited. " ' "[A] defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion—and on the same ground—the defendant made an assignment of misconduct and requested that the jury be admonished to disregard impropriety." ' " (*People v. Pearson* (2013) 56 Cal.4th 393, 426.)

Anticipating forfeiture, defendant urges us to consider his claim as one for ineffective assistance of counsel (IAC).

To establish ineffective assistance of counsel, "the defendant must first show counsel's performance was deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms. Second, the defendant must show resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would

6

have been different." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.) A reviewing court can conclude an IAC claim lacks merit without deciding whether counsel's performance was deficient if the record shows lack of sufficient prejudice. (*In re Ross* (1995) 10 Cal.4th 184, 204; *Strickland v. Washington* (1984) 466 U.S. 668, 697 ["there is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry . . . [i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed"].)

Here, there was no prejudice. The court instructed the jury that the prosecution had the burden of proof; that the only evidence the jury could consider was "the sworn testimony of witnesses, the exhibits admitted into evidence, and anything else" the court said could be considered as evidence; that "[n]othing that the attorneys say is evidence," including what they say in "their opening statements and closing arguments"; and if the jurors believed the "attorneys' comments on the law" conflicted with the court's instructions, then they "must follow" the court's instructions. The trial court also sustained defense objections to some of the prosecutor's questions and instructed the jury to ignore testimony for which an objection had been sustained, emphasizing only *admissible evidence* could be considered. " 'We presume the jury understood and followed' " the trial court's instructions and directives. (*People v. Sanchez* (2019) 7 Cal.5th 14, 55.) In addition, the objected-to comments were only a fraction of the prosecutor's closing argument.

There was also abundant evidence tying defendant to the shooting. The victim positively identified defendant as the front passenger in the car and told officers shortly after the incident that defendant shot him. Defendant himself testified that he was in the Camaro, that the other two

7

passengers told him there was a gun and ammunition in the car, and that after the shooting, he removed his ankle monitor, data from which showed defendant in the area on the date and time of the shooting and which was later found in a dumpster along with ammunition of the type fired at the victim.

In sum, there is no reasonable probability that but for counsel's asserted failure to object to the prosecutor's closing argument the outcome would have been different. We therefore reject defendant's IAC claim

***Five-Year Enhancement*[5]**

Defendant asserts the case must be remanded to allow the court to exercise its discretion to strike the section 667, subdivision (a)(1) enhancement.

Effective January 1, 2019, Senate Bill No. 1393 (2017-2018 Reg. Sess.) vested sentencing courts with discretion to strike enhancements imposed under section 667, subdivision (a) for prior serious felony convictions. (*People v. Ellis* (2019) 43 Cal.App.5th 925, 933; *People v. Garcia* (2018) 28 Cal.App.5th 961, 971.)

Where "the record shows that the trial court proceeded with sentencing on the . . . assumption it lacked discretion, remand is necessary so that the trial court may have the opportunity to exercise its sentencing discretion at a new sentencing hearing. [Citations.] Defendants are entitled to 'sentencing decisions made in the exercise of the "informed discretion" of the sentencing court,' and a court that is unaware of its discretionary authority cannot exercise its informed discretion." (*People v. Brown* (2007) 147 Cal.App.4th

---

[5] As previously mentioned, the trial court also imposed a one-year enhancement pursuant to section 667.5, and the Attorney General concedes this enhancement should be stricken.

8

1213, 1228.) However, when the record shows that " 'the trial court would not have exercised its discretion even if it believed it could do so, then remand would be an idle act and is not required.' " (*People v. Gamble* (2008) 164 Cal.App.4th 891, 901.)

The Attorney General agrees Senate Bill No. 1393 (2017-2018 Reg. Sess.) is applicable, but claims remand is unnecessary. While acknowledging the trial court "did not explicitly state it would not strike the . . . enhancement if given the discretion to do so," he contends the court's "intent . . . was clear" given the court's comments in denying defendant's *Romero* motion[6] to dismiss his prior strike,[7] and in explaining "what it saw as 'circumstances in aggravation.' "[8]

---

[6] Under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 504, the court may in certain cases and in the interest of justice strike an allegation of a prior felony conviction.

[7] In denying defendant's *Romero* motion, the court stated it had considered the nature of defendant's present offense as well as those of the prior strike and determined "there is no indication whatsoever that the defendant has reformed." Defendant had "continued to associate with gang members and commit serious violent crimes," had "not complied with any grant of probation," and had an "extensive history of criminal conduct."

[8] In explaining the "circumstances in aggravation," the court stated the "crime involved great violence, great bodily harm and viciousness"; the victim was shot and wounded in broad daylight on a busy public thoroughfare; defendant was "within hours from his release from custody" when the victim was shot, who was not a gang member but "just happened to be innocently out driving and targeted"; defendant is an "active participant in street terrorism and was convicted of this crime"; defendant had "been involved in multiple shootings" and had "an ongoing history of gun possession and gun violence," all of which indicated a "serious danger to society" and a "pattern of regular or increasing serious criminal conduct"; and he was on parole at the time the crime was committed. The court found no circumstances in mitigation.

9

The Attorney General cites to two cases. The first is *People v. McVey* (2018) 24 Cal.App.5th 405, 409 which involved a firearm enhancement. Under the applicable statute, the trial court had discretion to impose a low, middle or high term. During sentencing, the court stated " 'the high term . . . [was] the only appropriate sentence' " on the enhancement. (*Id.* at p. 419.) The Court of Appeal concluded remand was unnecessary "[i]n light of the trial court's express consideration of the factors in aggravation and mitigation, its pointed comments on the record, and its deliberate choice of the highest possible term for the firearm enhancement." (*Ibid.*)

The second case is *People v. Jones* (2019) 32 Cal.App.5th 267, 272 which, as here, involved a five-year enhancement under section 667, subdivision (a)(1). The Court of Appeal concluded remand was unnecessary given the trial court's statements when denying the defendant's motion for new trial and during sentencing. (*Id.* at pp. 273-274.) Additionally, on the only count where the trial court "could have exercised leniency in sentencing . . . it did not"; rather, the court, despite already having imposed a life term with parole, imposed the maximum term "knowing that when doubled, the term would add two additional years to defendant's sentence over what he would have served had the court imposed the midterm." (*Id.* at p. 274.)

The circumstances here are different. Although the trial court imposed a significant sentence—22 years and eight months—as requested by the prosecution, and which included the high term for count 4 (shooting at an occupied vehicle) and the misdemeanor resisting arrest count, the court imposed one-third the midterm for counts 2 (street terrorism) and 6 (felon in possession of a firearm). And while it is clear the court was of the view defendant should receive a stiff sentence, we cannot conclude that its comments were so unequivocal as to exclude the possibility the court would

exercise its discretion afforded under Senate Bill No. 1393 (2017-2018 Reg. Sess.) to strike the section 667, subdivision (a) enhancement. (See *People v. McDaniels* (2018) 22 Cal.App.5th 420, 428 [remand proper; although court "imposed a substantial sentence . . . it expressed no intent to impose the maximum sentence," it imposed the midterm for being a felon in possession of a firearm and ran it concurrently to the principle term, and struck four prior convictions it had found true].)

**Pitchess *Review***

Prior to trial, defendant filed a *Pitchess* motion seeking disclosure of personnel records pertaining to Department of Justice Special Agent Michael Mattson and another officer.[9] Defendant sought documents maintained by the Contra Costa District Attorney's Office or the California Department of Justice pertaining to Mattson, which recorded or reflected "illegal/false arrest or detention;" "filing false charges;" or "conduct reflecting discredit, including but not limited to fabrication of evidence and dishonesty." The Attorney General and Department of Justice filed an opposition brief. The trial court granted the motion and held an in-camera hearing with the litigation coordinator from the Department of Justice. The court concluded "there was no discoverable items."

In his opening brief, defendant asked this court for an independent review of the in-camera hearing to determine if the trial court abused its discretion. We ordered the trial court to provide us with the sealed transcript of the *Pitchess* proceedings, and the Attorney General does not object to the requested review.

*Pitchess* establishes that "a criminal defendant [can] 'compel discovery' of certain relevant information in the personnel files of police officers by

---

[9] Agent Mattson testified regarding 2008 uncharged crimes evidence.

11

making 'general allegations which establish some cause for discovery' of that information and by showing how it would support a defense to the charge again him." (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1018-1019; see §§ 832.7, 832.8; Evid. Code, §§ 1043-1045.)

"If the trial court concludes the defendant has fulfilled these prerequisites and made a showing of good cause, the custodian of records should bring to court all documents 'potentially relevant' " or "potentially responsive to defendant's specific request." (*People v. Mooc* (2001) 26 Cal.4th 1216, 1226, 1228-1230.) The trial court must make a record of the documents it examines in ruling on defendant's motion sufficient to allow for appellate review. (*Id.* at p. 1229.) The trial court may photocopy the documents and place them in a confidential file, prepare a list of the considered documents, or "simply state for the record what documents it examined." (*Ibid.*) The hearing transcript and any relied-upon documents copied for the record must be sealed. (*Ibid.*) On appeal, we review the "record of the documents examined by the trial court" to determine if the court abused its discretion in failing to disclose any records. (*Ibid.*)

Having independently reviewed the sealed transcript of the *Pitchess* proceeding, we conclude the court sufficiently complied with proper *Pitchess* procedures and did not erroneously withhold any information. (*People v. Fuiava* (2012) 53 Cal.4th 622, 646-648.)

## DISPOSITION

The matter is remanded to allow the trial court to consider whether to strike the five-year enhancement imposed under section 667, subdivision (a)(1). The court is also directed to strike the one-year enhancement imposed under section 667.5, subdivision (b). In all other respects, the judgment is affirmed.

12

_____

Banke, J.


We concur:


_____

Humes, P.J.


_____

Margulies, J.


A155138, People v. Gillard

14