Filed 6/9/25  In re Johnson on Habeas Corpus CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re<br><br>MYRON JOHNSON,<br><br>on Habeas Corpus. | F086400<br><br>(Tulare Super. Ct. No. VCF346180) |

ORIGINAL PROCEEDINGS; application for writ of habeas corpus.

Brad Kaiserman, under appointment by the Court of Appeal, for Petitioner.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell and Kimberley A. Donohue, Assistant Attorneys General, Eric L. Christoffersen, Christopher J. Rench, and Jamie A. Scheidegger, Deputy Attorneys General, for Respondent.

-ooOoo-

## INTRODUCTION

Petitioner Myron Johnson seeks to withdraw his plea of no contest to being a felon in possession of a firearm (Pen. Code,[1] § 29800, subd. (a)(1)) on the ground his defense counsel provided ineffective assistance by misadvising him regarding his eligibility to earn good conduct credits at a rate of 50 percent (see Cal. Code Regs., tit. 15, § 3043.2, subd. (b)(3)) (sometimes referred to herein as half-time credits). He contends that, absent counsel's misadvisement, he would not have entered the plea.

We agree petitioner's counsel provided ineffective assistance and, as a result, petitioner must be permitted to withdraw his plea.

## BACKGROUND[2]

"Between about November 1, 2016, and December 1, 2016, [petitioner], who had a prior felony conviction, persuaded four victims under the age of 18 years to engage in commercial sex acts.

"On January 20, 2017, [petitioner] possessed a firearm.

"On December 8, 2017, in case No. VCF346180, the Tulare County District Attorney filed an information charging [petitioner] with three counts related to firearm and ammunition possession.

"The same day, in case No. VCF346256, an information was filed charging [petitioner] with 20 counts related to trafficking of a minor, pimping, and pandering against four victims.

---

[1] Undesignated statutory references are to the Penal Code.

[2] We granted petitioner's request for judicial notice of the appellate opinion and record from his appeal before this court in case No. F082441. We quote from that nonpublished opinion (*People v. Johnson* (June 24, 2022, F082441) to obtain the facts set forth in the background section of this opinion. Citation thereto falls within the exception to California Rules of Court, rule 8.1115(b)(1) to explain the factual background of the case and not as legal authority (*In re W.R.* (2018) 22 Cal.App.5th 284, 286–287, fn. 2).

"On May 30, 2019, the trial court held a change of plea hearing.  The following discussion occurred:

> " 'THE COURT:  [That term is c]oncurrent?
>
> " '[PETITIONER]:  With half time.
>
> " '[DEFENSE COUNSEL]:  And all of these offenses carry half time.
>
> " '[PETITIONER]:  I'm being sentenced to half time on my credits for the time I've been in custody?  I want to make sure.  My apologies.
>
> " 'THE COURT:  It's okay.  That's how it works.
>
> " '[DEFENSE COUNSEL]:  We'll put it on the record just to make sure it travels.
>
> " 'THE COURT:  That's not a problem, but I do understand it will take us a couple weeks to get a probation report.
>
> " '[PETITIONER]:  Yes.'

"Later at the same hearing, when the prosecutor was describing the terms of the plea offer, she stated:  'As to any credit issues, I leave those up to [the Department of Corrections and Rehabilitation (CDCR)].  I know there ha[ve] been several changes to the law after the Prop[osition] 57 passage.  So I will make no guarantees as to credits.  I know CDCR is doing additional credits.'

"[Petitioner] later asked, 'The probation report will have the amount of days that I've been in custody as my credits running with the case, and it will implement that I'm getting half time, one day counts as two days, via the discretion that my behavior is good?'  The court answered, 'If you have good time and work time, that will total up to basically 50 percent credits pursuant to [section] 4019 of the Penal Code.  That's a Penal Code section.  That's how it's applied.  It's not like we're gonna do it this way and one person this way.  Penal Code Section 4019 credits.  As long as you did your part of it, which is stay out of trouble, then you get the full [section] 4019 credits.'

3.

"In case No. VCF346256, [petitioner] pled no contest to counts 1, 9, 13, and 17, amended so that each was a violation of . . . section 236.1, subdivision (c)(1). In case No. VCF346180, [petitioner] pled no contest to being a felon in possession of a firearm (§ 29800, subd. (a)(1)) in count 1. In both cases, he admitted a prior 'strike' conviction allegation within the meaning of the 'Three Strikes' law. (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d).) According to the agreement, [petitioner] would be sentenced to a total of 30 years eight months on the two cases.

"On June 17, 2019, the trial court sentenced [petitioner] to the agreed-upon 30 years eight months in prison, as follows: in case No. VCF346256, on count 1, the upper term of 24 years; on count 9, five consecutive years[3]; on count 13, 16 concurrent years; and on count 17, eight concurrent years. In case No. VCF346180, the court imposed 16 consecutive months on count 1. The court imposed various fines and fees and awarded 1,757 days of presentence custody credits (859 days, plus 439 days of conduct credits and 439 days of work credits).

"After the court finished sentencing, the following exchange occurred:

" '[DEFENSE COUNSEL]: . . . [Petitioner] is asking that it be on the record that what he is being sentenced to is eligible for half time in CDCR . . . .

" 'THE COURT: I'm not sure because of his prior strike. That's my concern. The credits get reduced.

" '[DEFENSE COUNSEL]: Right. So he might not get milestone time. That's up to CDCR, but because what he pled to isn't violent, then it is eligible for half time.

---

[3] The prosecutor informed the trial court, as it was pronouncing sentence, that count 9 should be concurrent rather than consecutive, so the court initially restated as instructed. However, the concurrent term on count 9 was inconsistent with the plea agreement. (*People v. Johnson, supra*, F082441.) On June 24, 2019, the court resentenced petitioner to correct the sentence on count 9 to reflect a consecutive term of five years, four months.

" 'THE COURT:  Okay.  And I will let CDCR deal with that.  If there is an issue with it, you can always bring it back, but I believe that because—I'm not sure the relationship between the prior strike, because I know credits are reduced for that and the other one.  If there are offenses in there that are not serious and violent, then he could possibly be eligible.  I'm not going to make the ruling that he is.

" '[PROSECUTOR]:  For the record, the People made no promises at the time of the offer that [petitioner] was going to be getting half time and no promises were made today.

" '[DEFENSE COUNSEL]:  Just—and I'm not saying that the People have promised anything.  What I am stating is that because the offenses are both nonviolent and not serious, that they are eligible for half time.

" 'THE COURT:  And he can make that argument, certainly.  I have no problem with that.  We really hadn't discussed that.  That wasn't part of the plea.  Whatever the law allows, that's what's going to happen.

" '[PETITIONER]:  She shook her head yeah.'

"On February 4, 2021, [petitioner] (assisted by new counsel) filed a motion to withdraw his pleas, arguing that defense counsel was ineffective for misadvising him during the plea bargaining and sentencing.  He claimed he accepted the plea offer based on defense counsel's advice that he would serve only half of his 24-year term on count 1 because section 236.1, subdivision (c)(1) is not a violent crime.  In actuality, however, he did not qualify for half-time credits because of his prior strike conviction, as mandated by the Three Strikes law (§§ 667, subd. (c)(5); 1170.12, subd. (a)(5)).  Attached to this motion was a declaration by defense counsel (unsigned and undated), attesting that she misadvised [petitioner] regarding the credits he would be eligible to earn in prison.

"The prosecution filed an opposition to the motion, raising several reasons the motion should be denied:  First, [petitioner] had already raised the issue in a habeas corpus petition filed on May 5, 2020, although the prosecution could not locate the ruling on the petition.  Second, the trial court's jurisdiction over the case had long since passed and there were no extraordinary circumstances under which the court should entertain a

motion to withdraw the plea. Third, even if the court had jurisdiction, [petitioner] would have to justify the delay and address the reason a denial of habeas would allow the motion. Finally, the assurance of receiving certain credits would not be a valid basis to withdraw a plea.

"On February 25, 2021, the trial court held a hearing on [petitioner's] motion to withdraw the plea. New counsel claimed [petitioner] had filed a petition for writ of habeas corpus in May 2020 but had received no ruling. The prosecutor stated she did not know what had happened to the petition and a ruling could not be found. The court denied the motion, noting that 'it appears the issue may have been ruled upon or brought up in habeas corpus, and the Court does not intend to duplicate any proceeding from that filing here.'

"The same day, [petitioner] filed a notice of appeal.[4]

"On April 7, 2021, appointed [appellate] counsel moved to augment the appellate record with the habeas corpus petition, any opposition filed, and both the clerk's and reporter's transcripts of any proceeding related to the petition. On May 12, 2021, the clerk of the trial court responded with a declaration stating she was unable to locate any such documents." (*People v. Johnson*, *supra*, F082441, fns. omitted.)

Appellate counsel asked this court "to review the record to determine whether there [were] any arguable issues on appeal. (*People v. Wende* (1979) 25 Cal.3d 436.) [Petitioner] was advised of his right to file a supplemental brief within 30 days of the date of filing of the opening brief. [Petitioner] did not respond. After filing the *Wende* brief, appointed counsel filed an application to expand appointment to include preparation of a petition for writ of habeas corpus to be filed in the trial court on the ground of ineffective assistance of counsel in misadvising [petitioner] that he would receive 'half-time' credits

---

[4] Petitioner separately appealed the denial of his motion to withdraw his plea in case No. VCF346256. (*People v. Johnson* (June 24, 2022, F082438) [nonpub. opn.].)

6.

in prison." (*People v. Johnson*, *supra*, F082441.) Ultimately, this court determined the appellate record was inadequate to evaluate whether petitioner received ineffective assistance of counsel, and we therefore affirmed. However, we granted appellate counsel's request for an expanded appointment to prepare a petition for writ of habeas corpus to be filed in the trial court. (*People v. Johnson*, *supra*, F082441.)

Petitioner filed a petition for writ of habeas corpus in the trial court on January 3, 2023. The People opposed the petition. The People conceded petitioner was misadvised by counsel as to the good conduct credits he would earn, but argued petitioner was not prejudiced because (1) the likely outcome at trial would have been a life sentence, and (2) he had begun earning half-time credits as of May 1, 2021. Additionally, the People asserted CDCR records showed petitioner would serve an aggregate term of 15 years based on his then-current credit calculation, which was less than petitioner represented he had anticipated from his plea.

At the March 6, 2023 hearing on the petition, the trial court stated that "the only issue" was the time period from the sentencing date to when petitioner started receiving good conduct credits at a rate of 50 percent. The court stated, "Ultimately, it appears in the totality of the circumstances, looking at the totality of the sentence, he will eventually receive one half credits, i.e., 50 percent." Accordingly, the court found no basis for relief and denied the petition.

On June 13, 2023, petitioner filed a petition for writ of habeas corpus in this court, seeking vacatur of the conviction and permission to withdraw his plea of no contest.[5] On November 14, 2024, this court ordered the Attorney General to show cause why the relief prayed for should not be granted.

---

[5] He also filed a petition for writ of habeas corpus in this court regarding his plea in case No. VCF346256. (*In re Johnson*, F086404.)

## DISCUSSION

### I. Timeliness of Petition

In their informal response to the petition, the People argued the petition should be denied as untimely. We disagree.

" '[C]laims raised in a habeas corpus petition must be timely filed.' " (*In re Sodersten* (2007) 146 Cal.App.4th 1163, 1220.) However, neither the California Supreme Court nor the Legislature has expressly established a time limit for filing a petition for writ of habeas corpus. (*In re Huddleston* (1969) 71 Cal.2d 1031, 1034; see *In re Nuñez* (2009) 173 Cal.App.4th 709, 723; *In re Sodersten*, at p. 1221.) Generally, a habeas corpus petition must be filed "as promptly as the circumstances allow" (*In re Clark* (1993) 5 Cal.4th 750, 765, fn. 5) and " ' "[a]ny significant delay in seeking collateral relief . . . must be fully justified" ' " (*In re Sodersten*, at p. 1221). "Delay is measured from the time a petitioner knew, or reasonably should have known, the information in support of the claim and the legal basis for the claim [citation], beginning as early as the date of conviction." (*In re Nuñez*, at p. 723, italics omitted.)

Here, petitioner was sentenced on June 17, 2019, and resentenced to correct an error to the sentence in case No. VCF346256 on June 24, 2019. According to petitioner's declaration, he learned "[s]ometime after [he] was sentenced" that he was earning good conduct credits at a rate less than 50 percent. As the People previously conceded in the trial court, petitioner filed, or attempted to file, a petition for writ of habeas corpus addressing the variance between his earned and anticipated good conduct credits on May 5, 2020, but the petition was not ruled on. (See *People v. Johnson*, *supra*, F082441.) On February 4, 2021, petitioner filed a motion to withdraw his pleas, which was denied on February 25, 2021. (See *ibid*.) Petitioner promptly filed a notice of appeal on February 25, 2021. On August 13, 2021, appointed appellate counsel filed an application for an expanded appointment to prepare a petition for writ of habeas corpus to be filed in

the trial court. We deferred ruling on the request until June 24, 2022, at which time the request was granted.

Petitioner filed a petition for writ of habeas corpus in the trial court on January 3, 2023. The petition was denied on March 6, 2023. On March 23, 2023, counsel filed an application for an expanded appointment to prepare a petition for writ of habeas corpus to be filed in this court, which was granted on March 30, 2023. On May 30, 2023, counsel filed an application for extension of time in which to file the petition for writ of habeas corpus. We granted the request and extended the time for filing the petition to June 29, 2023. The petition was filed in this court on June 13, 2023.

To the extent the People's claim of untimeliness relates to petitioner's pursuit of remedies in the trial court, the People should have raised this claim below so the trial court could address it in the first instance. (*In re Sodersten*, *supra*, 146 Cal.App.4th at p. 1222.) They did not do so. In any event, petitioner first sought relief in the trial court less than a year after sentencing. He diligently and consistently continued to seek relief, both in the trial court and in this court, thereafter. Additionally, we note that some of the delay in filing a petition for writ of habeas corpus was justified by counsel's "need to secure guaranteed funding before proceeding further." (*Id.* at p. 1221.) We also acquiesced in further delay of the filing of a petition in this court by granting petitioner an extension of time. (*Ibid.*)

This does not appear to be a case where petitioner " 'sat on his rights' " (*In re Sodersten*, *supra*, 146 Cal.App.4th at p. 1222) or failed to pursue available remedies "as promptly as the circumstances allow[ed]" (*In re Clark* (1993) 5 Cal.4th 750, 765, fn. 5). Regardless, assuming the delay between petitioner's sentencing and his filing of this petition is so " ' "significant" ' " or " ' "substantial" ' " to warrant further justification (*In re Sodersten*, at p. 1221), we conclude petitioner has met his burden of establishing justification for the delay.

**II.    The Variance Between Petitioner's Anticipated and Earned Custody Credits**

The petition for writ of habeas corpus is based on petitioner's claim that he has not earned all the good conduct credits he anticipated when he entered his plea.  According to petitioner, because he earned credits at a rate of 33.3 percent during the first part of his incarceration, rather than the expected rate of 50 percent, he earned approximately 81 fewer days of good conduct credits than he anticipated based on defense counsel's representations.  The People do not dispute petitioner's calculation.  However, as we explain, petitioner's calculation is incorrect.  Had petitioner been eligible to earn good conduct credits at a rate of 50 percent, rather than 33.3 percent, he would have earned an additional 244.5 days of credit during the relevant period.  Because this calculation is relevant to both petitioner's claim of prejudice and the parties' arguments regarding the appropriate remedy, we begin by explaining the credit earning system and the mathematical calculations necessary to determine the difference between petitioner's anticipated and earned credits.

From the date of his incarceration until April 30, 2021, petitioner was eligible to earn good conduct credit at a rate of 33.3 percent.[6]  (Cal. Code Regs., tit. 15, § 3043.2, subd. (b)(3)(A).)  For inmates earning credits at a rate of 33.3 percent, CDCR calculates credits as follows:  for every two days of incarceration actually served, an inmate is eligible to earn one day of good conduct credit.  (Cal. Code Regs., tit. 15, § 3043.2, subd. (b)(3)(A).)  In other words, up to one third (33.3 percent) of the inmate's sentence may be served through good conduct credit.

Petitioner has provided this court with a CDCR credit calculation worksheet dated April 6, 2023.  The calculation worksheet reflects that, from petitioner's entry into CDCR custody on July 2, 2019, through April 30, 2021, he served 489 actual days in custody for

---

[6] Beginning May 1, 2021, petitioner began earning good conduct credit at a rate of 50 percent.  (Cal. Code Regs., tit. 15, § 3043.2, subd. (b)(3)(B).)

10.

which he earned good conduct credit.[7]  During this time, he earned credit at a rate of 33.3 percent, i.e., one day of good conduct credit for every two days of incarceration actually served, for a total of 244.5 days of good conduct credit.

However, had petitioner been eligible to earn good conduct credit at a rate of 50 percent, up to 50 percent of his sentence during this period could be served through good conduct credit.  Under such circumstances, he would have earned *one day* of good conduct credit for *every day* of incarceration actually served, for a total of 489 days of good conduct credit.  (See Cal. Code Regs., tit. 15, § 3043.2, subd. (b)(3)(B).)

The difference between petitioner's anticipated good conduct credits at the 50 percent rate (489 days) and his earned credits at the 33.3 percent rate (244.5 days) is 244.5 days, rather than 81 days, as petitioner contends.[8]

## III.    Defense Counsel's Performance Was Deficient

With his petition, petitioner submitted a declaration from his defense counsel. Therein, defense counsel states she erroneously advised petitioner that, "because he would be pleading to non violent offenses, he would be eligible for half time credits, and that if he programmed and met milestones, he would receive additional credits."  Defense counsel further states petitioner was "ill advised by [her] and encouraged to take a plea deal in this matter," and that he "took the plea deal in this case as a result of his reliance on [defense counsel's] advice."  Petitioner also submitted his own declaration, stating, "Prior to entering my plea, I was advised by my attorney . . . that I would receive half time credits during my time serving my sentence."

---

[7] During this time, he also served 180 days (from Mar. 17, 2020, through Sept. 12, 2020) during which he earned no good conduct credit due to his disciplinary status.  (See Cal. Code Regs., tit. 15, § 3044, subd. (b)(6).)

[8] It appears petitioner arrived at the 81-day calculation by multiplying his 489 days of actual custody by 50 percent, then multiplying 489 actual days by 33.3 percent, and taking the difference of these two numbers.  As explained, this is not how CDCR calculates good conduct credits.

" '[A] defendant claiming a violation of the federal constitutional right to effective assistance of counsel must satisfy a two-pronged showing: that counsel's performance was deficient, and that the defendant was prejudiced, that is, there is a reasonable probability the outcome would have been different were it not for the deficient performance.' " (*People v. Woodruff* (2018) 5 Cal.5th 697, 736.) As the People concede, petitioner was misadvised by defense counsel regarding his ability to earn custody credits. We conclude petitioner has met his burden of showing defense counsel's performance was deficient. (See *Strickland v. Washington* (1984) 466 U.S. 668, 687 (*Strickland*) ["[A] guilty plea cannot be attacked as based on inadequate legal advice unless counsel was not 'a reasonably competent attorney' and the advice was not 'within the range of competence demanded of attorneys in criminal cases.' "]; see also *People v. Kim* (2009) 45 Cal.4th 1078, 1104 ["an attorney has a constitutional duty at least not to affirmatively *misadvise* his or her client as to the immigration consequences of a plea"].)

## IV.     Petitioner Was Prejudiced by Defense Counsel's Misadvisement

Petitioner contends he was prejudiced by counsel's misadvisement because he would not have entered his no contest plea had he known he was limited to "one-third" custody credits for even a portion of his custody time. The People neither concede nor dispute that petitioner was prejudiced. We conclude petitioner has met his burden to demonstrate prejudice. (See *Strickland*, *supra*, 466 U.S. at p. 693.)

"[I]n order successfully to challenge a guilty plea on the ground of ineffective assistance of counsel, a defendant must establish not only incompetent performance by counsel, but also a reasonable probability that, but for counsel's incompetence, the defendant would not have pleaded guilty and would have insisted on proceeding to trial." (*In re Alvernaz* (1992) 2 Cal.4th 924, 934.) In considering prejudice, we may consider whether the misadvisement made the plea bargain more attractive than it would have appeared without the misadvisement. (Cf. *People v. Goodwillie* (2007) 147 Cal.App.4th

12.

695, 734.)  We also may consider the likely outcome if petitioner had gone to trial.  (*Hill v. Lockhart* (1985) 474 U.S. 52, 59–60 [in determining prejudice, courts should consider whether a defendant was likely to have been convicted of the charged offenses, and if so, whether he would have received a shorter sentence than he or she received pursuant to the plea agreement].)  However, while "[t]he probability of obtaining a more favorable result at trial is one factor to consider in evaluating prejudice . . . it is not necessarily the determinative factor." (*People v. Ogunmowo* (2018) 23 Cal.App.5th 67, 78.)  The ultimate question remains whether "the defendant would have chosen not to plead guilty or nolo contendere, even if the court also finds it not reasonably probable the defendant would thereby have obtained a more favorable outcome." (*People v. Martinez* (2013) 57 Cal.4th 555, 559.)

Neither party has presented argument regarding petitioner's likelihood of success at trial.  However, it appears that, in cases Nos. VCF346180 and VCF346256, petitioner understood he was facing a maximum potential sentence of 120 or 127 years to life.  While petitioner's potential exposure was great, the record nonetheless reflects that his ability to earn half-time credits was of paramount importance in his decision to enter the plea.

In his declaration, petitioner states that his eligibility to earn "half time credits" was "an extremely important factor" in his decision to enter the plea.  He further states that, had he known his credits would have been limited to "one-third of [his] custody time for nearly the first two years" of his incarceration, he would not have entered his plea.  Finally, he states that "[t]he amount of time that [he] would actually have to spend in custody was the primary motivat[or] for entering the plea, and [he] relied on [defense counsel's] erroneous advisement about the custody credits in deciding to enter the plea. [He] would not have entered the plea if [defense counsel] had properly advised [him] about the custody credits [he] could expect to receive."  Defense counsel's declaration similarly demonstrates that petitioner sought her advice about his eligibility to earn

13.

custody credits in relation to his plea. The court's colloquy with petitioner and defense counsel following sentencing further confirms petitioner continued to rely on defense counsel's erroneous advice regarding his eligibility to earn half-time credits while in CDCR custody, despite a lack of assurances from the court or prosecutor that he was eligible to earn credits at that rate. (*People v. Johnson*, *supra*, F082441.)

The issue of petitioner's eligibility to earn half-time credits was significant enough for petitioner to raise it with counsel and the court on the record. Petitioner's and defense counsel's declarations, taken together with the contemporaneous evidence of petitioner's focus on half-time credits, are sufficient to convince us it is reasonably probable petitioner would not have entered the plea if he was properly advised he would be limited to earning good conduct credits at a rate of 33.3 percent for a portion of his incarceration. We therefore conclude petitioner was prejudiced by counsel's misadvisement.

## V. Vacatur of the Judgment and Remand To Allow Petitioner To Withdraw His Plea Is the Only Available Remedy

Petitioner argues the judgment should be vacated and he should be permitted to withdraw his plea. The People contend we may remedy any prejudice to petitioner by awarding him 81 additional days of custody credit. Petitioner contends that the People's proposal of specific performance is not legally permissible. Petitioner has the better argument.

Where a defendant has been prejudicially misadvised by the trial court in relation to a consequence of a plea, "[t]he remedy of specific performance is unavailable." (*Berman v. Cate* (2010) 187 Cal.App.4th 885, 900.) Instead, the only remedy that may be afforded the petitioner is the opportunity to withdraw his or her plea. (*Ibid.*) Although petitioner here was misadvised by defense counsel rather than the trial court, we nonetheless conclude specific performance is not an available remedy.

First, to remedy the prejudice from counsel's misadvisement, we would be required to award petitioner 244.5 days of additional custody credit, far more than the 81

14.

days the People suggest. Moreover, we agree with petitioner that this remedy is not legally permissible. Aside from local credits awarded pursuant to section 4019, good conduct credits are not part of the court's sentence or judgment. Rather, it is the responsibility of CDCR to "calculate and apply any custody credits that have accrued" following imposition of the sentence. (*People v. Buckhalter* (2001) 26 Cal.4th 20, 31.) Such credits are governed by CDCR's own regulations, which have the force and effect of law. (*Agricultural Labor Relations Bd. v. Superior Court* (1976) 16 Cal.3d 392, 401; see *People v. Buckhalter*, at p. 31 ["Accrual, forfeiture, and restoration of prison worktime credits are pursuant to procedures established and administered by the Director [of CDCR]."].) Those regulations provide that petitioner was eligible to earn good conduct credits at a rate of 33.3 percent for the period of his incarceration up to and including April 30, 2021. The People do not provide any legal authority nor procedural process that would allow us to award petitioner additional good conduct credits that are contrary to the applicable regulations. Indeed, there is no legal mechanism for negotiating or approving a plea agreement mandating specific accruals of custody credits, let alone accruals that are contrary to law. (Cf. *People v. Avila* (1994) 24 Cal.App.4th 1455, 1461 ["[T]he parole period was a statutorily mandated consequence of defendant's conviction; it therefore could not have been the subject of negotiations or a condition of the final agreement."]; see *People v. McMillion* (1992) 2 Cal.App.4th 1363, 1369 [remedy of striking the parole period was unavailable where the court imposed a parole term in violation of the plea agreement].)

As such, we conclude the only remedy is to vacate the judgment and permit petitioner to withdraw his no contest plea.[9]

---

[9] Pursuant to Business and Professions Code section 6086.7, subdivision (a)(2), we are required to report our vacation of the judgment for ineffective assistance of counsel to the State Bar for investigation of the appropriateness of initiating disciplinary

15.

## DISPOSITION

The petition for writ of habeas corpus is granted and the judgment is vacated.  The matter is remanded to the trial court with directions to allow petitioner to withdraw his plea of no contest.  The order to show cause is discharged.


DETJEN, J.

WE CONCUR:


LEVY, Acting P. J.


FAIN, J.*

---

action against defense counsel.  We shall do so upon issuance of the remittitur in this case.

     \* Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.